THE PEOPLES' BANK OF THE CITY OF NEW YORK, Appellant, v. ORLANDO M. BOGART et al., Respondents.

There is no implied warranty or representation on the part of the vendor of a bill, valid in the hands of an indorsee, that it was drawn against funds, or that it was not accommodation paper.

A vendor of a bill purchased by him from and known by him to have been drawn for the accommodation of the acceptor, and as a means of borrowing money by the latter, is not bound, in the absence of any inquiry on the part of the vendee, and where the means of information are open to the latter, to disclose at the time of the sale the circumstances under which the paper was made.

The rule of *caveat emptor* applies in such a case.

D., S. & Co., a banking and commission firm, accepted drafts drawn upon the firm by B., a clerk in their employ, which were purchased by defendants, who were note-brokers. B. had no funds on deposit, and said firm was not indebted to him. Defendants knew that the drafts were not drawn against funds, but were issued by D., S. & Co. as a means of borrowing money. Plaintiff had no such knowledge. Defendants had been accustomed for several years to purchase similar acceptances and to sell them in the market. 'Plaintiff had purchased large amounts of them from defendants and other brokers. In pursuance of their custom defendants immediately after said purchase sent a written notice to plaintiff that they had for sale acceptances of D., S. & Co., stating the price paid and for what they would sell. Plaintiff purchased a portion of the paper. Defendant made no express representation of any kind as to the paper and no inquiry was made by plaintiff as to its origin, character or consideration. D., S. & Co. failed a few days after; up to the day of such failure that firm had enjoyed the highest financial credit and standing, and it did not appear that defendants had any knowledge or information that it was in embarrassed circumstances. *Held*, that an action to recover back. the moneys paid for the acceptances on the ground of, fraud, on the part of defendants, in concealing their knowledge of the origin and consideration of the paper was not maintainable.

*Brown* v. *Montgomery* (20 N. Y. 287), distinguished.

(Argued March 12, 1880 ; decided June 1, 1880.)

APPEAL from judgment of the General Term of the Supreme Court, in the first judicial department, affirming a judgment in favor of defendants entered upon an order dismissing the complaint on trial. (Reported below, 16 Hun, 270.)

The nature of the action and the facts are set forth sufficiently in the opinion.

*John Clinton Gray* and *Luther R. Marsh* for appellant. A holder of commercial paper, offering it for sale, is bound to disclose any knowledge he may have of any facts materially affecting and depreciating its value. (*Brown* v. *Montgomery*, 20 N. Y. 287, 292; *Lancy* v. *Clarke*, 64 id. 212; Kerr on Fraud, 94, 95; Addison on Torts, 399; *Clarke* v. *Banner*, 2 Lans. 67; 2 Kent, 483; *Rawdon* v. *Blatchford*, 1 Sandf. Ch. 344; *Allen* v. *Addington*, 7 Wend. 9, 23, 24; *Paddock* v. *Strowbridge*, 29 Vt. 470; *Hill* v. *Gray*, 1 Starkie, 434; *Bench* v. *Sheldon*, 14 Barb. 73; *Mellish* v. *Motteux*, Peake's N. P. Cases, 115.) A party who offers a piece of paper for sale, which has all the form and appearance of a bill of exchange, thereby represents it to be one, and if he knows that it is not, but is a sham or deceit, and withholds that knowledge, or the facts which would warrant that belief, from the purchaser, he suppresses a material fact which will make him liable to refund the amount of the purchase-money. (2 Parsons' B. & N., ch. 2, § 2, cases cited in note; Addison on Contr. 232; *Lancey* v. *Clark*, 64 N. Y. 212; *Azemar* v. *Cassella*, L. R., 2 C. P. 678; 2 Black. 466, 469, marg.; 3 Kent, 745, marg.; *Hartshorn* v. *Henshaw*, 11 How. [U. S.] 177–183; *Raborg* v. *Peyton*, 2 Wheat. [U. S.] 386; 1 Parsons on Bills, 323; 2 Greenl., § 169; *Mechanics' Bank* v. *Livingstone*, 33 Barb. 458; 2 Greenl., § 172; 1 Dan. on Neg. Inst., § 534; Story on Bills of Exch., § 12; *Atlantic Ins. Co.* v. *Bovis*, 6 Duer, 583; *Vere* v. *Lewis*, 3. T. R. 182; 2 Greenl., § 160; *Roach* v. *Ostler*, 1 Mann. & Ryl. 120; *Clark* v. *Des Moines*, 19 Iowa, 199; *Fairchild* v. *Ogdensburg R. R. Co.*, etc., 15 N. Y. 337; *Miller* v. *Thompson*, 3 Mann. & Grang. 576; *Davis* v. *Clark*, 6 Q. B. 19.)

*William Allen Butler* for respondents. It was incumbent on the plaintiff to substantiate the charge of fraud by competent proof at the trial. (*Marsh* v. *Falker*, 40 N. Y. 562, 566; *Dambmann* v. *Schulting*, 75 id. 55.) There was no

fraud in the description of the paper in question as an "acceptance," nor was that designation even a misnomer. (*Hoge* v. *Lansing*, 35 N. Y. 136, 138; *Lambert* v. *Heath*, 15 M. & W. 487, 488; *Otis* v. *Cullum*, 2 Otto, 447.) In the absence of representations and of any knowledge on the part of defendants, or notice to them that the acceptors were not abundantly able to respond to their engagements, no fraud can be predicated in the sale by them of genuine acceptances, of which they were previously themselves *bona fide* purchasers, even though the acceptances were "accommodation," and not "business" paper. (*Grant* v. *Ellicott*, 7 Wend. 227; *Smith* v. *Knox*, 3 Esp. 46; *Re Hammond*, 6 De Gex, M. & G. 699.) As the cause of action exhibited by the complaint was single, the gravamen being the charge of fraud, plaintiff could not have recovered at the trial for a breach of the supposed implied warranty, even if it had any existence. (*Ross* v. *Mather*, 51 N. Y. 108; *Barnes* v. *Quigley*, 59 id. 265; *Degraw* v. *Elmore*, 50 id. 1.) Even where an implied warranty exists, an action *ex delicto* cannot be maintained unless there is knowledge, and a fraudulent concealment, by which the purchaser is deceived and sustains damage by reason of the deceit. (*Hoe* v. *Sanborn*, 21 N. Y. 552; *Dounce* v. *Dow*, 64 id. 411; *Bartlett* v. *Hoppock*, 34 id. 118; *Dickinson* v. *Gay*, 7 Allen, 29; *Howell* v. *Biddlecom*, 62 Barb. 131, 135; *Hight* v. *Bacon*, 126 Mass. 10.)

ANDREWS, J. The plaintiff is a banking corporation, organized under the banking laws of this State, carrying on business in the city of New York. The defendants compose the firm of Orlando M. Bogart & Co., note-brokers, and dealers in commercial paper, also carrying on business in that city. The action is brought to recover of the defendants $34,453.83, the sum paid by the plaintiff on the purchase from the defendants on the 20th, 21st and 22d days of July, 1875, of certain acceptances of Duncan, Sherman & Co., a banking and commission firm in the city of New York, of drafts drawn upon them by one Alexander Burgess, dated at New York, July 19, 1875, payable three months after date. Duncan, Sherman & Co.

failed on the 27th of July, and the plaintiff, on the day of the maturity of the paper, tendered it back to the defendants and demanded the repayment of the money paid on the purchase, claiming to rescind the contract for the fraud of the defendants. The fraud alleged is that the defendants concealed from the plaintiff the knowledge possessed by them in respect to the paper, viz.: that the drawer was a salaried clerk in the employment of Duncan, Sherman & Co., having no other business relations with the firm than as such clerk, and that the acceptances were purchased by the defendants directly from the acceptors.

The evidence shows that the defendants, for several years prior to the transaction in question, had been accustomed to purchase from Duncan, Sherman & Co., their acceptances of paper drawn by Burgess, and selling it in the market. The transactions of this character were frequent, and the plaintiff purchased large amounts of the paper from the defendants, and also from other brokers. The defendants, on the 19th of July, 1875, purchased of Duncan, Sherman & Co. $70,000 of this paper, paying therefor the nominal amount less their commissions, and interest to the maturity of the paper at the rate of five and one-half per cent per annum. In pursuance of their custom to notify their customers of what paper they had for sale, they immediately sent a written notice to the plaintiff to the effect that they had for sale, acceptances of Duncan, Sherman & Co., and stating the price they had paid, and the price for which they would sell the paper, which was a small advance upon their purchase. The plaintiff's president came to the defendants' office and purchased $15,000 of the paper. The next day he applied to purchase $15,000 more. The defendants having, in the meantime, sold the whole amount of the $70,000 of paper purchased on the 19th, purchased on the 20th, of Duncan, Sherman & Co., $30,000 more of similar paper from which they supplied the additional $15,000, desired by the plaintiff, and on the succeeding day the plaintiff's president purchased another acceptance of the same character, for $5,000, which he selected from a large number of securities of other parties which the defendants had for sale.

There was no representation of any kind made by the defendants to the plaintiff on the sale of the acceptances beyond what was implied in the offer to sell acceptances of Duncan, Sherman & Co. The plaintiff's president made no inquiry as to their origin, character or consideration. It is to be assumed that the defendants knew that the drafts were not drawn against funds and that they were issued by Duncan, Sherman & Co., as a means of borrowing money (for that is the clear import of the transaction), and that the plaintiff had no knowledge of these circumstances. But there is no evidence whatever that the defendants had any knowledge or information that Duncan, Sherman & Co. were in embarrassed pecuniary circumstances. The evidence is undisputed that for many years, and up to the day of their failure, the firm of Duncan, Sherman & Co. enjoyed the highest financial credit and standing. The confidence of the defendants in their solvency is indicated by their purchasing Duncan, Sherman & Co.'s paper in large amounts on their own account, and although they purchased for sale and not for investment, yet they took the risk of their solvency, between the time of the purchase and the resale. The plaintiff, in purchasing the paper from the defendants, relied upon the credit of the acceptors as is manifest from the circumstances. The plaintiff's president or officers did not know the drawer, and had purchased the same description of paper on previous occasions, and neither, at the time of the transaction in question nor before, did they make any inquiry to ascertain the drawer's identity or responsibility. The plaintiff took the paper without the indorsement of the sellers, and made no inquiry and exacted no warranty. The plaintiff's president was well acquainted with the commercial credit of Duncan, Sherman & Co., and upon that, and that alone, did he rely in purchasing the paper.

We are of opinion that the plaintiff failed to establish a case which would have justified the jury in finding that the defendants committed a fraud in the sale of the paper. The fact that the defendants offered to sell the paper, and did sell it as acceptances of Duncan, Sherman & Co. was not, we think, a

representation that it was business paper, drawn against funds· or credits of the drawer, in the hands of the drawees, or in the ordinary course of business transactions between them. The paper had all the essential requisites of accepted bills of exchange. The drawer and drawees were different parties, and upon the transfer of the paper by Duncan, Sherman & Co., both became liable to the holder upon distinct and independent contracts. *Prima facie,* every acceptance affords a presumption of funds of the drawer in the hands of the acceptor, and of an appropriation of these funds for the use of the drawer (*Raborg* v. *Peyton,* 2 Wheat. 385), and upon this presumption remedies are administered. The acceptance is evidence of money had, received by the acceptor for the use of the holder, and an action for money had and received will lie in his favor against the acceptor, and he cannot defeat the action by proof that he accepted without funds. STORY, J., in the case cited, referring to the presumption that the bill is drawn against funds, says: " The case may indeed be otherwise, and then the acceptor pays the debt of the drawer, but as between himself and the payee, it is not a collateral but an original and direct· undertaking." Acceptances without funds, or accommodation acceptances, are certainly not unusual commercial transactions, and this must be well understood among commercial men. *In re Hammond* (6 De Gex, M. & G. 699) the Lord Justice KNIGHT BRUCE says: " Now I do not think that the mere circumstance of a man parting with a bill, without saying, this is an accommodation bill, amounts to an implied representation that it is not an accommodation bill ; I am not aware of any sufficient reason or authority for so extensive a proposition." The law on the sale of commercial paper implies a warranty on the part of the vendor of title and that the instrument is genuine (*Littauer* v. *Goldman,* 72 N. Y. 506 ; see, also, *Lobdell* v. *Baker,* 1 Met. 193), and also as stated by Judge STORY that the vendor " has no knowledge of any facts which prove the instrument if originally valid to be worthless either by failure of the maker, or by its being already paid, or otherwise to have become void or defunct."

(Story on Prom. Notes, § 118.) But no case has been cited supporting the proposition that there is any implied warranty or representation on the part of the vendor of a bill valid in the hands of the indorsee, that it was drawn against funds, or that it was not accommodation paper. The bills in question were acceptances, and in law and fact instruments of the description of these offered for sale by the defendants, and purchased by the plaintiff.

In the absence then of any representation by the defendants in respect to the origin or consideration of the bills, the remaining question is whether the defendants were under a legal duty to inform the plaintiff at the time of sale, of the circumstances under which they were made. The general proposition is asserted by the learned counsel for the plaintiff, that the holder of negotiable paper who knows a material fact affecting its market value, and who sells it for full value without disclosing such fact, is liable to the purchaser for the amount paid for the paper, if after the discovery of the suppression, the purchaser elects to rescind the sale. But the proposition asserted is broader than the recent authorities warrant. The law requires disclosure to be made only when there is a duty to make it, and this duty is not raised by the mere circumstance that the undisclosed fact is material, and is known to the one party, and not to the other, or by the additional circumstance that the party to whom it is known, knows that the other party is acting in ignorance of it. It must be assumed on this appeal, that if at the time of the purchase of the paper it had been known in the community that Duncan, Sherman & Co. were selling their own acceptances in the market it would have created suspicion and affected their credit, and that the plaintiff would not have purchased it. But the fact that Duncan, Sherman & Co. were borrowing under disguise would at most be ground of suspicion of pecuniary embarrassment. The borrowing of money by men engaged in large transactions, as Duncan, Sherman & Co. were, as bankers and dealers in cotton on their own account, and on commission, is certainly not unusual, and this although

the borrowers may be persons of large means, and the fact that they borrowed by methods which would not disclose that they were borrowers, would not necessarily be inconsistent with good faith or solvency. It might be inconsistent with both, and it may have been in this case. But the question is, were the defendants under a duty to communicate the discrediting facts within their knowledge, in the absence of any inquiry in respect to the origin of the paper, and when the means of information were accessible to the purchaser, and was their omission to do this an actionable fraud, they having done nothing to mislead or divert inquiry, and all that they did being to offer the paper for sale. We are of opinion that the law did not cast upon them the duty of such disclosure. The defendants were in the attitude of vendors of paper purchased and owned by them. The plaintiff was seeking investment for its funds, and became the purchaser of the paper in reliance on the judgment of its officers as to its value. There was no relation of trust or confidence between the parties. If the plaintiff's president in buying the paper thought of the subject at all, and believed that the bills were drawn against funds, the mistaken belief was not induced by any act or statement of the defendants, and they were under no legal obligation to volunteer to inform him that the fact was otherwise. (*Attwood* v. *Small*, 6 Cl. & Fin. 232; id. 443–7; *Smith* v. *Hughes*, L. R., 6 Q. B. 597.) It was held in *Nichols* v. *Pinner* (18 N. Y. 295; *S. C.*, 23 id. 264), that the mere omission of a purchaser of goods on credit to disclose his insolvency to the vendor, in the absence of any attempt to defraud, is not such a concealment as will avoid the sale, and yet the fact if known to the seller would affect his credit. Judge Selden, in his opinion in that case, says : " It has never, that I am aware of, been held that a purchaser is bound when no questions are put to him in regard to it, to disclose his own pecuniary condition and means of payment. If he makes no false statements, and resorts to no acts or contrivances for the purpose of misleading the vendor, it is not, I think, a fraud, to say nothing on the subject." (See, also, *Dambman* v. *Schulting*, 75 N. Y. 55.)

" The general rule," says Story, " both of law and equity, in respect to concealments, is that mere silence with regard to a material fact which there is no legal obligation to divulge will not avoid a contract, although it operates to the injury of the party from whom it is concealed." (Story on Cont., § 516; see, also, Benj. on Sales, 338, and cases cited.) The case of *Brown* v. *Montgomery* (20 N. Y. 287) was a case of the sale of a post-dated check of a party whose paper had gone to protest on the day the sale was made, which was known to the vendor's agent who made the sale, but who did not disclose the fact to the purchaser. The paper had become worthless by the sudden failure of the drawers, and the court held that the duty of disclosure rested upon the holder of the check under the circumstances of that case. That case furnishes no support to the claim of the plaintiff in this. *Caveat emptor* is the rule of the common law, founded upon wise policy, " to induce vigilance and caution, and to prevent opportunities for deceit, which lead to litigation, by casting upon every man the responsibilities of his own contracts, and to burden him with the consequences of his careless mistake." (Story on Cont., § 517.) We are of opinion that this rule is applicable to this case, and that the plaintiff, neither upon the facts proved, or offered to be proved, was entitled to recover.

The judgment should, therefore, be affirmed.

All concur, except RAPALLO, J., not voting.

Judgment affirmed.