## PARKER V. AUSLAND.

A complaint to recover the amount paid to defendant for a county warrant alleged that plaintiff bought the warrant from defendant under defendant's representation that it was a legal and *bona fide* charge against the county, whereas defendant well knew that the warrant was illegal and that payment thereof would be enjoined, and that, after plaintiff paid defendant for the warrant, payment thereof was enjoined, and the warrant declared void. *Held*, that the complaint stated facts sufficient to constitute a cause of action under Code Civ. Proc §§ 3598, 3599, providing that one who willfully deceives another is liable for damages caused thereby.

(Opinion filed April 3, 1900.)

Appeal from circuit court, Brule county. Hon. FRANK B. SMITH, Judge.

Action by John Parker against Martin Ausland to recover money paid for an illegal county warrant. From an order sustaining a demurrer to the complaint, plaintiff appeals. Reversed.

*S. H. Wright* and *B. C. Huddle*, for appellant.

*James Brown*, for respondent.

CORSON, J. This is an appeal from an order sustaining a demurrer to the complaint. The only question to be considered is, does the complaint state facts sufficient to constitue a cause of action? The complaint alleged, in substance, that in January, 1897, a county warrant was allowed and issued by the county commissioners of Brule county for the sum of $250; that, for various reasons stated in the complaint, the county warrant so issued was illegal and void. It is further alleged that on or about the date of its issue the defendant became possessed of said warrant, and on the same day (January 5, 1897) he was apprised by divers persons of the illegality of the said warrant, and that he was informed that the payment thereof would be enjoined. It is further alleged that said defendant, being advised and knowing of the illegality of the said warrant, and having been informed that its payment would be enjoined, wrote and duly posted to the plaintiff the following letter: "Chamberlain, S. D. Jan. 7th, 1897. Mr. John Parker, Esq., Kimball, S. D.—Dear Sir: I have a $250.00 Brule county warrant, which I bought yesterday, which you may have for 95c. on the dollar, which is just what I paid for it. I have been buying warrants for Mr. Smith right along at this price, but I got a letter from him last night saying that he did not care for any more. This warrant was issued this meeting of the board to S. Winter. It is what is called an 'artesian well warrant,' but we haven't made any difference on that account lately. If you want this warrant let me know by return mail, as I will send it to Mr. Smith if you don't take it. Respectfully, yours, Martin Ausland, Mgr. Chamb. Yd.,"—to which letter the plaintiff replied as follows: "Jan. 8th, 1897. Mr. Martin Ausland, Chamberlain, S. D.—Dear Sir: Yours of the 7th inst. at

hand.   If your warrant is on the general fund, and given for a legal bill, and registered, I will take it at 5 per cent discount. Forward it to Mr. Jenison, and I will pay him.   Very resp., John Parker."   On the same day the defendant again wrote to plaintiff as follows:   "Chamberlain, S. D., Jan. 8th, 1897. Mr. John Parker, Esq., Kimball, S. D.—Dear Sir:  Yours of to-day at hand.  I send the warrant referred to, and two small ones, to Mr. Jenison, and asked him to take them over to you.   I could probably buy some warrants for you, but think you ought to allow me 1c. commission.   I can buy them for 95, and would be willing to let you have them at 96.  Mr. Smith has been taking them this way, and I have invested my own money when I had a chance, and then resold to him.   But, since he doesn't care for any more, I could try some for you as well as not.  Let me hear from you.   Respectfully, yours, Martin Ausland."   It is further alleged that prior to and since said dates plaintiff has been engaged, among other things, in the purchase of county warrants, and that the defendant was then, and still is, in the employment of one J. A. Smith, and that he was manager for said Smith of his lumber yard at Chamberlain, while the Mr. Jenison referred to was manager of Smith's lumber yard at Kimball, and that said Smith, as plaintiff well knew, was engaged in the purchase of Brule county warrants.   It is further alleged that the plaintiff was impressed with the belief that the said warrant was a legal, regular and *bona fide* charge against the county of Brule, and acting upon the faith of the representations, both express and implied, as shown by the foregoing correspondence, the plaintiff bought the said warrant on the 9th day of January, 1897, and paid to the agent of the defendant the sum of $237.50, which sum was

duly turned over and delivered to the said defendant by his agent, as the plaintiff is informed and believes; that the plaintiff would not have purchased the said warrant, save and but for the said representations of the said defendant, together with the plaintiffs' knowledge that the defendant was employed by the said Smith, whom the plaintiff knew was in the habit of buying county warrants. It is further alleged that the defendant knew that the said warraut was not a legal warrant, and that he suppressed the facts relating to its illegality, by which the plaintiff was misled into making the purchase of the same; and the plaintiff avers that the defendant, in the manner and by the means aforesaid, willfully deceived the plaintiff, with intent to cheat and defraud him out of his money, and with the intent to induce him to alter his position to his injury, and that said deceit, fraudulent representation, and suppression of facts caused and induced the plaintiff to part with the sum of $237.50. It is further alleged that on or about the 9th day of February, 1897, a judgment was entered against the plaintiff, perpetually enjoining and restraining the payment of the said warrant, and said warrant was thereupon ordered to be returned into court and canceled, which was accordingly done, and that such decree is now in full force and effect, and has never been set aside or appealed from; and the plaintiff demands judgment for the sum of $237.50, with interest thereon from January 9, 1897, besides costs.

The action, therefore, as will be seen, was brought upon the theory that the plaintiff was induced to purchase the said warrant by the deceit and fraudulent representations of the defendant. Sections 3598 and 3599 of our Civil Code provide as follows: ''One who willfully deceives another, with

intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers." "A deceit, within the meaning of the last section, is either: (1) The suggestion, as a fact, of that which is not true, by one who does not believe it to be true; (2) the assertion, as a fact of that which is not true, by one who has no reasonable ground for believing it to be true; (3) the suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact; or (4) a promise, made without any intention of performing." As the facts alleged in the complaint are, for the purpose of this demurrer, presumed to be true, we may assume that the warrant in controversy was illegally issued and was invalid. We may also assume that the defendant, prior to writing his first letter to the plaintiff, had been advised that the warrant was illegal, and that an action would be commenced to restrain its collection and cancel it. We may also assume that the plaintiff knew nothing of the alleged invalidity of the county warrant, and relied entirely upon the statements made to him by the defendant in his letters. Was there, therefore, a concealment on the part of the defendant of facts which should have been communicated, or in other words, did he willfully deceive the plaintiff, with intent to induce him to alter his position to his injury and risk? If he did thus willfully deceive him, with intent to induce him to part with his money, the statute declares that he is liable for any damage which the plaintiff thereby sustains. It appears from the complaint that Parker knew that Ausland was in the employ of Smith, and that he had been engaged in purchasing county warrants for Smith. The representation, therefore, on the part of Ausland, that

Smith had written him that he would not take any more war-
rants at that time, which the plaintiff alleges was false, was
calculated to mislead the plaintiff into the belief that the only
reason why Smith would not take this warrant was that he had
all that he required at that time.   It will be noted that Parker,
in reply to the first letter of Ausland says:   "If your warrant
is on the general fund, and given for a legal bill, and registered,
I will take it," etc.   Ausland in reply to this, forwarded the
warrant to Mr. Jenison, to be delivered to the plaintiff; there-
by, in effect, asserting that the warrant was "given for a legal
bill."   The defendant knew that the legality of the warrant
was questioned, and was advised that an action was to be com-
menced to restrain its collection.   It was his duty, therefore,
to have informed the plaintiff of these facts.   By failing to do so,
he must be held guilty of willfully deceiving the plaintiff, and
thereby inducing him to part with his money.   Sections 3598
and 3599 of our Code are copies of Sections 848 and 849 of the
Civil Code as proposed by the commissioners of the state of
New York.   The third subdivision of Section 849 seems to have
been based upon the case of Allen v. Addington, 7 Wend. 9, in
which the New York court held that, where a party fraudulent-
ly suppressed facts within his knowledge, he was liable to an
action by one who had been injured thereby.   While it may not
be required of a party to disclose all of the facts concerning
title to property which he is about to dispose of, if he makes
any statements in regard to such title they must be truthful
statements.   The defendant's assertion, in effect, by forward-
ing the warrant in controversy, that the warrant was issued
upon a legal bill, therefore, was a false representation that the
warrant was a legal warrant.   The plaintiff relied, and had a

right to rely, upon his representations (Barnes v. Railway Co., 4 C. C. A. 199, 54 Fed. 87,) and is entitled to recover the damages which he may have sustained by reason of the falsity of those representations.

It is claimed that the defendant did not know that the warrant was illegal and invalid. But he did know that its legality was questioned, and that a suit was contemplated to restrain its collection. When, therefore, he, in effect asserted that it was a legal and valid warrant, he asserted that which he did not know to be true, and what he had strong reason to believe was in fact untrue. It was said in the case last cited: "Even if it could be assumed that the defendant had no actual knowledge of the fact misrepresented, this would not relieve it from liability. It represented the fact to be, as of its own knowledge, that this land was within its grant, and that it was the owner of it. If it knew this to be false, that was fraud of the most positive kind. If it did not know whether its statement was true or not, the positive statement, of its own knowledge, that it was so, was a false and fraudulent statement that it did know this to be the fact; and, as this statement caused the same damage to the plaintiff, the defendant is equally liable in either event." 4 C. C. A. 201, 54 Fed. 89. In Cooper v. Schlesinger, 111 U. S. 148, 4 Sup. Ct. 360, 28 L. Ed. 382, Mr. Justice BLATCHFORD, delivering the opinion of the supreme court, declared that a statement recklessly made, without knowledge of its truth, was a false statement knowingly made, within the settled rule. The case of Bank v. Bogart, 81 N. Y. 101, cited on the part of the respondent, does not, in our view, support his position. In that case the plaintiff purchased of a broker's firm in the city of New York bills of exchange accepted by Duncan, Sherman &

Co. The plaintiff in the action had frequently purchased of the broker that class of paper, and it took the paper without the indorsement of the sellers, and made no inquiry, and exacted no warranty. The plaintiff's president was well acquainted with the commercial credit of Duncan, Sherman & Co., and upon that, and that alone, did he rely in purchasing the paper. The court very properly held in that case that the defendants were not liable, as they had made no representations of any kind, and concealed no fact that they were required to make known to the purchaser; in other words, they were sellers of ordinary commercial paper, without representation of any kind, as guarantors or warrantors. . This case seems to come within the principle laid down in Whitbeck v. Sees, 10 S. D. 417, 73 N. W. 915.

These views lead to the conclusion that the complaint does state facts sufficient to constitute a cause of action, and that the court below was in error in sustaining the demurrer. The order of the court below is reversed.