(33 Misc. Rep. 633.)

### RECKNAGEL v. STEINWAY et al.

(Supreme Court, Special Term, New York County. January, 1901.)

1. AMENDED ANSWERS—DEMURRERS—LAW OF CASE.

Where, on demurrer to a complaint on a contract, a judge of the court held that the contract must be deemed to be founded on a sufficient consideration, and to be a binding and valid agreement, such decision is the law of the case, and conclusive of the same question when raised on demurrer to the answer.

2. PLEADING BY REFERENCE—CONSTRUCTION—DEMURRER.

Where defendants interpose affirmative defenses, and in each affirmative defense allege that they repeat, reiterate, and insist on each and every of the denials heretofore set forth in the answer, such allegations will be construed, on demurrer, as referring only to necessary and pertinent allegations of the new matter, and not to general denials of plaintiff's complaint.

3. AFFIRMATIVE DEFENSES—SUFFICIENCY.

Plaintiff and her father-in-law entered into an agreement whereby, in consideration of the payment of the sums sued for, plaintiff agreed that she would not enforce, or attempt to enforce, any judgment entitling her to alimony or allowance from her husband. Held, that the fact that no such decree had ever been obtained did not constitute a breach of the agreement on the part of plaintiff, or a defense to an action on the agreement, since, no decree having been obtained before the execution of the agreement, it could not be presumed that it required such a decree to be obtained, but rather the nonenforcement of any decree which might be obtained, and hence such a defense was insufficient.

4. SAME.

Plaintiff and her father-in-law entered into an agreement whereby, in consideration of the payment of certain sums for the support of plaintiff and her children, plaintiff agreed not to enforce, or attempt to enforce, any decree granting her alimony or allowance against her husband. Held, that the fact that plaintiff secured a divorce from her husband in another state, which was fraudulent and void, did not make the agreement one without consideration, since the agreement presumed some sort

of action; and hence an answer alleging such facts was insufficient as a defense to an action on the agreement.

5. SAME.

That plaintiff concealed from her father-in-law, at the time of making the agreement, her intended marriage to another after securing a divorce from her husband, did not establish a defense of fraud, since the agreement was merely to relieve her husband from his obligation to support her and her children.

6. SAME.

That plaintiff, by violation of law in securing a divorce from her husband and a speedy marriage, violated public policy, does not constitute a defense to an action on an agreement between her and her father-in-law whereby, in consideration of the payment of certain sums for the support of herself and children, she agreed not to enforce any decree for alimony or allowance against her husband; some sort of action being contemplated by the agreement.

7. SAME.

. Where plaintiff and her father-in-law entered into an agreement whereby certain payments were to be made for the support of herself and her children, the fact that plaintiff and her children claim certain shares of stock which the father intended to give his son, but instead retained the stock, so as to pay for plaintiff's support from the dividends, is not a defense to an action on the agreement to the amount of the stock, since, if the gift should be found valid, the action would be against the son's executors, in whom the legal title would vest; and hence an answer alleging such fact was insufficient on demurrrer.

8. SAME—COMBINING DEFENSES.

Where several distinct affirmative defenses are alleged in an answer, no one of which by itself was sufficient to constitute a whole or partial defense to the action, the grouping of the defenses together does not render the answer a complete defense.

Action by Ottilie C. Recknagel against Charles H. Steinway and others, as executors of William Steinway, deceased. On demurrer to the affirmative defenses of defendants. Demurrer sustained.

R. Burnham Moffat, for plaintiff.
George W. Cotterill, for defendants.

BISCHOFF, J. The complaint in this action is to recover a money judgment against certain defendants as executors of William Steinway, deceased, and other defendants as trustees, under an alleged agreement of June 24, 1895, between William Steinway, now deceased, and this plaintiff. The agreement, to recover under which the action is brought, is made a part of the complaint as Exhibit A thereto. The defendant executors have interposed four affirmative defenses,—two as partial, and two as complete, defenses to plaintiff's amended complaint. The plaintiff has demurred to the first and second affirmative defenses on the ground that they are insufficient in law upon the face thereof, and to the third and fourth upon the grounds that each is insufficient in law upon the face thereof as a counterclaim or as an affirmative defense, and fails to state facts sufficient to constitute a cause of action.

Some of the questions raised by these demurrers have been passed upon heretofore by Mr. Justice Freedman and Mr. Justice Russell. Under Mr. Justice Russell's decision, which must stand as the law of this case, the alleged contract sued upon must be deemed to be-

founded upon a sufficient consideration, and to be binding and valid as an agreement. Such determination was made upon the defendant's demurrer to the complaint, and the direct question decided was as to the sufficiency of the consideration for the promise of defendants' testator. After the determination on the demurrer of defendants, decided by Mr. Justice Russell, the defendants answered and set up four distinct defenses, to which the plaintiff demurred for insufficiency in law. Mr. Justice Freedman pointed out, while deciding in favor of the plaintiff upon the demurrer, with leave to the defendants to amend, that if all the facts set forth in the four defenses had been pleaded as one equitable defense it might be a grave question whether, taken together, they might not constitute at least a partial equitable defense to plaintiff's claim; but as each of the defenses demurred to set up distinct facts, without reference to the allegations contained in any of the other defenses, or without reference to the denials in the other defenses, the question was as to whether the facts therein contained in each, standing by themselves and considered independently of the facts pleaded elsewhere, stated a distinct or partial defense in whole or in part to the plaintiff's claim, and he held that when so considered each of the four defenses was insufficient in law under the construction of the contract made by Mr. Justice Russell, which was followed by Mr. Justice Freedman, and which must be followed herein.

Thereafter the defendant executors served an amended answer, and have apparently sought to meet the suggestion made by Mr. Justice Freedman by incorporating in the first affirmative defense the denials in the amended answer and the allegations contained in the second, third, and fourth defenses, with the same force and effect as if specifically set forth. As to the second defense, they have also reiterated the denials and repeated the allegations contained in the first, third, and fourth defenses, with the same force as if repeated; as to the third, they have repeated the denials in the amended answer, but by reference, including the allegations contained in the first, second, and fourth defenses as a part thereof; and in the fourth defense they have repeated the denials in the amended answer, and by reference made the allegations contained in the first, second, and third defenses a part thereof. In substance, therefore, each one of these affirmative defenses incorporates and makes all of the other affirmative defenses a part thereof, and while in form there are alleged four several defenses, in fact there is but one defense, alleged separately as a complete defense and as a partial defense to plaintiff's alleged cause of action; and the question presented for consideration is briefly whether all the facts alleged, together with the denials as affirmative matter, are sufficient in law upon their face as a partial or complete defense, or whether they allege facts sufficient to constitute a defense or counterclaim. Indeed, the learned counsel for the defendant executors concedes that the substantial question for the court to decide is, "Do the facts alone and considered together constitute a defense?"

A primary question arises as to the effect of the introductory clause at the beginning of each affirmative defense, which in terms "repeats,

reiterates, and insists upon each and every of the denials heretofore set forth in this amended answer." Of course, if this clause be given its full force and effect, it substantially makes the whole answer part of the affirmative defense, and, as the denials are sufficient to raise an issue, if the whole answer be treated as embodied in each defense thereto, the demurrer would necessarily be overruled, and without accomplishing the real purpose which should be determined thereby; and I am of opinion that such practice of incorporating bodily, by averment merely, a complete defense, should not be sanctioned by the court when decided by the rigid rules of a demurrer, but that only such facts as are necessary and pertinent to the complete allegations of the new matter should be permitted so to be incorporated. If this be true, and it has the sanction of authority (see Garrett v. Wood, 27 App. Div. 312, 50 N. Y. Supp. 950), the question presented herein is narrowed, as it should be, to whether all of the additional facts alleged by way of affirmative matter constitute together a complete or partial defense to plaintiff's alleged cause of action.

That being true, the inquiry is whether, in the language of Mr. Justice Freedman, such facts constitute at least a partial equitable defense to plaintiff's claim,—a question that, under his opinion, was purposely left an open, and considered by him a grave one, and not necessarily determined by him, as argued by the learned counsel for the plaintiff, and must be considered de novo. The plaintiff has brought a common-law action to recover on a written contract under which William Steinway in his lifetime agreed to pay to trustees for the use of plaintiff the sum of $6,000 per annum from the 1st day of July, 1895, to the 1st day of July, 1898, in quarterly payments, for the support and maintenance of plaintiff, and the support, maintenance, and education of three children of George A. Steinway, the son of William Steinway, deceased, and the plaintiff, and thereafter, from the 1st day of July, 1898, until the youngest of said children or the last to arrive at the age of 21 years shall so arrive, to pay to the trustees the sum of $7,500 annually in quarterly payments of $1,875. On the part of the plaintiff was a covenant to support and maintain herself, and to support, maintain, and educate the children, and provide a home for them out of the proceeds of the sums agreed to be paid in such manner as might be most advisable for the welfare of herself and children; and plaintiff "further agrees that she will not enforce, or attempt to enforce, any judgment, order, or decree of any court or judge entitling the party of the second part to recover or collect from the said George A. Steinway any alimony, allowance, or other provision for the support and maintenance of herself, or for the support, maintenance, and education of the said children." A further affirmative covenant on the part of plaintiff was that she should permit George A. Steinway to visit and see the children at least once in each month at their home for a reasonable time and at hours convenient.

It may be most convenient to consider the alleged defenses seriatim in the first instance, as alleged in the complaint. The first is, in substance, that there never was any judgment entitling the plain-

tiff to recover or collect from the said George A. Steinway any alimony, allowance, or other provision for the support and maintenance of herself, or for the support, maintenance, and education of the children; that there never was any such decree, and could be none, therefore, in the future, because of the death of George A. Steinway, and, therefore, the defense is effectual. But to so hold would be tantamount to determining the complaint insufficient upon its face, thus holding adversely to the prior determination. Yet it is apparent that, as there never was any judgment, order, or decree of any court or judge entitling the plaintiff to recover or collect from George A. Steinway any alimony, allowance, or other provision, of which fact William Steinway, deceased, must be presumed to have had knowledge, that provision in the contract should not be read except as referring to any future judgment, order, or decree which might be obtained by the plaintiff herein to recover or collect such alimony, allowance, or other provision. Such is the fair intendment and reasonable construction of the contract. It is also apparent that this provision was incorporated in the contract in order that George A. Steinway, the son, might not be molested by proceedings growing out of matrimonial actions, and not with a view to existing ones at that time, and in any event, since no judgment, order, or decree ever existed up to the death of George A. Steinway, this plaintiff could not be guilty of a breach thereof by affirmative action on her part, and in substance such defense is undoubtedly insufficient; and this view is emphasized by the fact that the contract did not, and could not, be held to have rested solely upon the existence of an order for alimony only. Such provision was but a single covenant of the plaintiff, and had reference to the future. Certainly the agreement does not recite, nor would it be fair to infer from any of its terms, that such a decree was in existence. All that plaintiff in substance agreed was that, if any such decree should be made, she would not attempt to enforce its provisions as to alimony or support; and, as was pointed out by Mr. Justice Russell, if she broke such promise, that might be an affirmative defense, but the mere fact that there never has been, and there never now could be, such a decree, is not a breach of any agreement upon the plaintiff's part.

The further facts stated in the second affirmative defense are in substance that at the time of entering into the agreement the plaintiff was engaged to be married to Carl Recknagel, her present husband, and that she fraudulently and collusively obtained a divorce in the state of North Dakota, in violation of the laws of said state and this state, particularly in her alleging that she was a resident of North Dakota, whereas in point of fact she was not such a resident, and never abandoned her residence in the state of New York, and having, as she supposed, procured her divorce, returned at once to the state of New York and married her present husband in the city of New York, and has continued to reside in said state, and that her intentions in that respect were concealed from William Steinway. It may, too, and of necessity must, for the purpose of deciding the issue on this second affirmative defense, be assumed that plaintiff and her then husband fraudulently arranged and agreed to ob-

tain such divorce in violation of the law of the state where obtained, as well as the laws of the state of New York. The alleged North Dakota action was commenced on September 26, 1895. The contract sued upon bears date June 24, 1895. On the other hand, it must be assumed, from the contract itself, that some kind of matrimonial action was contemplated as at least a possibility on the part of William Steinway, deceased, and this plaintiff, at the time the contract was entered into. It is now urged by the defendants that the decree obtained in North Dakota was absolutely void, in contemplation of law no decree at all, and there is, therefore, nothing to support the agreement of June 24, 1895; but the answer to this is that if the argument be correct that the decree is void, therefore no decree at all, the position of plaintiff with her former husband was that of one who attempted to do iniquity, but failed of success, and equity would scarcely interfere and support a defense upon the theory of such attempt which failed. Equity may interfere with one who attempts to do iniquity, and succeeds, but scarcely will interfere with one who attempts to do iniquity, but fails.

Aside, however, from this view, while it is true that plaintiff agreed not to enforce any judgment, order, or decree for alimony or support of herself and her children, the defense fails in this aspect, in that it does not show the obtaining by plaintiff of a decree and the attempted enforcement thereof. The question might be an entirely different one, had the contract provided a covenant on the part of plaintiff that she would obtain a valid divorce from her then husband; but, as I consider the contract, it is scarcely material, for the purpose of this suit, whether plaintiff had or had not obtained a decree of divorce from her then husband. The pertinent question is, was there a decree in which there was a provision for alimony, and which, in violation of the contract, plaintiff undertook to enforce? Whether valid or invalid, the decree of North Dakota could not defeat plaintiff's recovery herein; and this is particularly true, as it appears from the decree, made a part of the answer, that no provision whatever is made for alimony therein.

It is further urged that the suppression of the fact of her intended marriage was a fraud practiced upon William Steinway, and was the means used by the plaintiff to get all she could from him; that William Steinway was entitled to repose upon the fact that the right of George Steinway to oppose the decree should not be trammeled by her, and, if any decree were obtained at all, it should be a legal one. It does not appear, either under the circumstances of this case or from any of the allegations, that there was any duty on the part of this plaintiff to disclose to William Steinway, deceased, what her future intentions were; nor does it appear, by the allegations of the complaint or the contract itself, that such future intentions entered into the question of consideration at the time the contract was made, except in so far as the affirmative covenants on the part of plaintiff are above referred to. So, too, according to the allegations of this answer, whatever suppression or fraud was perpetrated, if any was perpetrated, was jointly done by this plaintiff and George Steinway; and if, as urged by defendants' counsel, William Steinway, deceased,

was entitled to repose upon the fact that the rights of George Steinway to oppose any decree should not be trammeled by her, then it was a provision for George Steinway's benefit, and his father could scarcely be heard to complain if his son participated in the transaction, and thus waived a personal benefit expressly made for him. But the fact should not be overlooked that the object of Mr. Steinway, when he entered into this contract with plaintiff, was not merely to provide for the maintenance and support of the plaintiff, and for the maintenance, support, and education of her children, but also to relieve his son George Steinway of the duty which the law cast upon him of support of his family; and it would be an unfair interpretation of the contract to infer that plaintiff's intended marriage could have influenced William Steinway's mind, except in so far as it might have had a bearing upon the plaintiff's means of support, and the means of support and education of the three infant children, which was one of the express objects of the contract itself as entered into by the parties. If it be assumed, therefore, that plaintiff concealed from William Steinway the fact of her expected marriage, which, taken in the most favorable aspect to the defendants, might or might not have been realized, it does not follow that such concealment would have had a material bearing, so as to have affected the making of the contract by William Steinway, and certainly not of sufficient bearing to defeat the recovery thereunder. I do not understand the law to have gone so far as to have required on the plaintiff's part the disclosure of intention on her part to remarry, which, at best, must have been but a probability. There certainly was no relation of trust and confidence existing between the parties contracting upon which could be asserted the duty as a matter of law of disclosure to William Steinway by plaintiff of her prospective marriage, whatever might have been her duty in the forum of conscience in respect thereto; and by analogy, at least, this view is clearly supported. See Bank v. Bogart, 81 N. Y. 107; Wood v. Amory, 105 N. Y. 278, 11 N. E. 636.

The most serious question presented by the second affirmative defense is that plaintiff's acts, as alleged, were a violation of public policy, and the remarriage of the plaintiff has so changed the situation of the parties as to justify the court, as a court of equity, in refusing to enforce the contract. Carefully analyzed, what public policy has been violated that would justify a court in refusing to enforce this contract, and thus visit the evil effect of such decision upon the innocent children, as well as upon the plaintiff; the contract having been made for their benefit, as well as for hers? If we assume, as we must do, that the plaintiff was engaged to be married, before the death or divorce of her husband, to another; that she and her then husband connived together to obtain a fraudulent divorce, which would not be upheld in the state where granted or here; that the plaintiff afterwards married her present husband, to whom she was engaged,—upon what theory could the court refuse to enforce a purely legal agreement, entered into by plaintiff and William Steinway, based upon such a defense? The argument of counsel for defendants is that it is the public that has been wronged by the

flagrant violation of the law by plaintiff, coupled with her speedy remarriage, as well as William Steinway, and that because it is not to be supposed that William Steinway intended to offer plaintiff a premium for fraudulent conduct, and while he could not prevent her from taking such course in regard to the separation she desired, she had no right to exercise an improper influence over her own husband, so as to get him to consent to a divorce in fraud of William Stein-way. Such an affirmative defense is certainly vague and shadowy. The courts are open for the redress of wrongs to all, regardless of the social status or moral character of the individual, unless, through accident, mistake, or other peculiar equitable grounds relating to the specific contract or matter under consideration, redress is refused. In this case there was no obligation on the part of the plaintiff not to procure the divorce. There was no obligation on her part not to remarry after the divorce, and, indeed, there was apparently no restraint contemplated under this contract in this respect, which well might have been provided for, had William Steinway, deceased, sought to curtail plaintiff's privileges in any way in that respect. It was the enforcement of any decree for alimony, alone, in which plaintiff was restrained. The natural and orderly provision to have been contained in the agreement, had William Steinway designed that nominally, at least, the relation of husband and wife should be continued between plaintiff and her then husband, it seems to me, would have been to provide an express covenant to that effect in the contract; but, in view of the provision as to the enforcement of the decree for alimony, if any, some kind of matrimonial decree was undoubtedly contemplated by the parties thereto.

The question might be entirely different, if presented in some litigation growing out of the divorce obtained as alleged, or based upon property rights dependent thereon; but, in the case at bar, to give effect to the conduct of the plaintiff in the respects referred to as a defense would be practically judicially determining that a person guilty of one violation of public policy could have no redress, even upon matters independent thereof, and to allow such a matter to be presented to the court for determination as a defense would open the door in every case to the question of the litigant's compliance with the general rules of public policy as a condition precedent to his recovery in any action,—a subject which may well be relegated to the realms of moral philosophy.

In substance, the third affirmative defense alleges, as stated by counsel for defendants, that William Steinway, without any consideration therefor, procured a policy of insurance in the sum of $30,000 on the life of his son George Steinway, the then husband of plaintiff, and also, without consideration, paid the premiums thereon, amounting, up to the time of the death of George Steinway, to $12,-873.60, and that the proceeds of such policy were collected by the executors of George Steinway on his death. The executors, defendants in this action, ask that the amount of money so realized be credited upon the face of the claim in case the agreement sued upon be held enforceable in law, and claim that equity has power to make such adjustment. That seems to be one of the questions that was

passed upon by Mr. Justice Freedman, and as an affirmative defense is scarcely worthy of serious consideration, standing alone by itself; and in the disposition thereof made by said justice I fully concur.

As to the fourth alleged defense, as stated in substance by counsel for defendants, it is claimed that it was the intention of William Steinway to make a gift to his son George of 500 shares of stock of Steinway & Sons, but that such intention was never carried out, nor was such interest ever procured, and that William Steinway retained said stock to enable himself, by reason of the dividends he would receive thereon, to make the various payments under the alleged agreement, and that the plaintiff, in behalf of herself and children, claims the said stock, or an interest therein, and if it should be adjudged that the gift of said stock was perfected, then that the value of said stock and the dividends already paid thereon should be credited against any amount which may be decreed in favor of the plaintiff by virtue of said alleged agreement, provided said alleged agreement should be held to be valid and enforceable as a whole or in part against the estate of William Steinway. It is sufficient answer to this to say that, while the facts might be germane and proper for consideration in connection with other facts, yet it is apparent that, if such relief is sought as is asked in this affirmative defense, it should be against the executors of George Steinway, in whom the legal title thereto would be vested, and not as against this plaintiff, and then necessarily incidental only to some other rights which the defendants might have in respect to that particular property.

The foregoing consideration of the affirmative defenses, treated separately, demonstrates their insufficiency as a matter of law, or in equity, to constitute either a partial or complete defense, or as a basis for affirmative relief against this plaintiff. Nor does the grouping of the several alleged defenses together as one defense aid the defendants in spelling out either a whole or partial defense. Indeed, to consider the whole, as intended to be alleged, as a complete or partial defense on any theory advanced by defendants' counsel, it is necessary to eliminate many of the particular allegations to consistently set forth what defendants intend and urge as their several theories of defense; so that neither as a whole, nor taken separately, are the affirmative defenses sufficient in law or in equity to afford relief to defendants. It follows that the demurrers should be sustained, with costs.

Demurrers sustained, with costs.