James S. Brown, J.
Plaintiff appeals from a judgment in defendants’ favor entered upon a nonsuit directed at the close of the plaintiff’s case. Since the judgment was so directed it is elementary that upon this appeal the evidence adduced by the plaintiff must be considered in the light most favorable to him and that he be accorded the benefit of every favorable inference which could be drawn therefrom (Philpot v. Brooklyn Baseball Club, 303 N. Y. 116). With this fundamental principle as a guide it may be said that the record establishes the following facts and inferences:
Defendants Joseph J. C-and May E. C- are the parents of defendant Rose G. B-. The latter and plaintiff Joseph L. W-were married on June 13, 1942. This relationship was terminated by a decree of annulment entered in Kings County on September 25, 1947. The decree embodied a provision of a separation agreement entered into between the parties on August 12, 1947, that the plaintiff (in this action) pay to defendant the sum of $11 weekly for her support and maintenance, “ said payments to continue until the remarriage of the said plaintiff pursuant to agreement marked Plaintiff’s Exhibit #1.” It is to be noted that neither the separation agreement nor the decree designated the place where the payments were to be made.
*434 Prior to or shortly after the entry of the judgment of annulment the defendant Bose B- returned to the home of her parents at-Decatur Street in Brooklyn. On April 28, 1950 she married Douglas B-=-and shortly thereafter she and her second husband moved first to-Berriman Street in Brooklyn where they lived for a short period of time and then respectively to Lindenhurst and to Huntington in Suffolk County, where they presently reside. Her parents, however, continued to reside at - Decatur Street until March, 1955 when they moved to Bushwick Avenue in Brooklyn. Plaintiff, in ignorance of his former wife’s remarriage, complied strictly and faithfully with the separation agreement and the annulment decree by remitting regularly every week the sum of $11 by checks made payable to “ B. GL C-” (defendant B-’s maiden name). These were addressed and mailed to her at the Decatur Street address in Brooklyn. This plaintiff continued to do until some time in October, 1955. when the post office returned an envelope addressed to Bose Gf. B — -, which contained one of these checks, with the notation ‘ ‘ Beturn to Writer, Unknown, Insufficient Address. ’ ’ Apparently, though the defendants C-had moved to Bushwick Avenue in March, 1955, all of the mail containing the weekly checks was forwarded to them by the post office except the one in October, 1955, which was returned to plaintiff. Upon the return of this remittance plaintiff promptly visited the vicinity of-Decatur Street to investigate the situation and then for the first time learned from people in the neighborhood of the remarriage of his former wife in 1950. Defendant B-, apparently having become aware of the investigation, within less than a week thereafter wrote to plaintiff “ Please discontinue the checks.” This letter was sent from Brooklyn and was signed “ Bose G- C-
The evidence further discloses that subsequent to her remarriage defendant B — —- received- the checks either when she called at her parents’ home or when they visited her in her new marital abode first in Brooklyn and thereafter at her successive residences in Suffolk County. The checks were never deposited by defendant B--— in any account. At no time after indorsing the checks “ B. Gr. C-” did she add as an indorsement her new married name “ B-.” When the checks were indorsed by her they were then either cashed in Brooklyn banks or various establishments in Brooklyn, many of them at S’s grocery store in the vicinity of Decatur Street. Some of the checks, after having been indorsed by the *435 payee, were indorsed by the defendant’s mother, May E. C — -, while others bear the indorsement of defendant’s father, Joseph J. C-, the latter having been placed thereon by his wife pursuant to a power of attorney. None of the checks was cashed or deposited in any Suffolk County account or bank.
Defendant B-conceded that after her remarriage and departure from the parental home no personal mail, other than plaintiff’s remittances, were addressed to her at the Decatur Street address. She also conceded that she was fully aware of the provision of the separation agreement and the decree of annulment and that plaintiff’s obligation to contribute to her maintenance and support by the payments of $11 a week terminated upon her remarriage.
Upon the foregoing facts and circumstances plaintiff brought this action framed in fraud and conspiracy against his former wife and her parents. The propriety of the dismissal of the complaint as to the latter need not detain us. Clearly no cause of action was presented by the proof as against them. Plaintiff failed to establish that they knew of the terms of the separation agreement or of the provision of the decree that plaintiff’s obligation to support the defendant B-terminated upon her remarriage. As to defendant Bose G-B-, plaintiff cogently urges that from the evidence adduced at the trial and the inferences that a jury could draw therefrom, a prima facie cause of action for fraud — deception by concealment — was established. It is the opinion of this court that this contention is meritorious. Defendant urges that she was under no duty to speak and that therefore her failure to notify plaintiff of her marriage does not constitute fraud. In reply to this, it may be said that: ‘ ‘ Silence may, however, constitute fraud and deception where [a party] has notice that [another] is acting upon a mistaken belief as to a material fact. It depends upon the circumstances of each case whether failure to disclose is consistent with honest dealing. Where failure to disclose a material fact is calculated to induce a false belief, the distinction between concealment and affirmative misrepresentation is tenuous. Both are fraudulent.” (Donovan v. Aeolian Co., 270 N. Y. 267, 271; see, also, Bank v. Board of Educ. of City of N. Y., 305 N. Y. 119, 134.)
It has also been stated that: ‘ ‘ The law requires disclosure to be made * * * when * * * the undisclosed fact is material, and is known to the one party, and not to the other [and] * * * the party to whom it is known, knows that *436 the other party is acting in ignorance of it. ’’ (People’s Bank.of City of N. Y. v. Bogart, 81 N. Y. 101, 107, quoted in Amend v. Hurley, 293 N. Y. 587, 596.)
It is immaterial whether the fraud is accomplished by words or acts (Noved Realty Corp. v. A. A. P. Co., 250 App. Div. 1). These statements are particularly apt when viewed in the light of the fact that a jury could readily infer from the proof adduced that defendant resorted to an artifice to frustrate plaintiff’s becoming informed of her remarriage. The circumstances of permitting the continuance of the remittances to her parents’ home after her departure therefrom while no other personal mail was received there by her, her failure to indorse with her married name any one of the 285 checks sent to her after her remarriage, the cashing of the checks in Brooklyn, either directly or through her mother as an intermediary while she was resident in Suffolk County, constitute affirmative action — or trick or device to conceal from the plaintiff the fact of her remarriage — at least a jury might so find. A jury might further find a “ consciousness of guilt ” from the circumstances that immediately upon her discovery that plaintiff was investigating the matter she wrote to him to discontinue payments. (Cf. Garippa v. Wisotsky, 108 N. Y. S. 2d 67, affd. 280 App. Div. 807, affd. 305 N. Y. 571.)
Defendant B- in seeking to sustain the dismissal maintains that the rules of law with respect to fraud in a “ matrimonial situation,” and particularly with reference to the recovery from the wife of alimony payments made pursuant to the decree terminating a marriage, differ from those relating to commercial transactions. The short answer to this contention is that fraud is fraud, and if practiced a remedy should be afforded to an injured party, otherwise an immoral and unjust result ensues. Law and morality should at all times coincide. The cardinal principle of the common law is to afford a remedy for all wrongs. (Cf. Schuster v. City of New York, 5 N Y 2d 75, 83_ _
_ _ Defendant maintains that plaintiff is not entitled to restitution of the moneys paid after her remarriage and cites many eases which hold that a motion for restitution of temporary or final alimony after reversal of an order or judgment is not maintainable to recover payments theretofore made. Defendant also cites the case of Kirkbride v. Van Note (275 N. Y. 244) for the proposition that though a decree will be amended nunc pro tunc as of the time of a remarriage with respect to unpaid alimony, restitution will not be ordered as to alimony paid subsequent to the remarriage. These cases are not in point. *437 None of them involved plenary actions framed in fraud buttressed by facts from which the fraud could be readily inferred by reasonably prudent men.
Having reached the conclusion herein it is unnecessary to determine whether the separation agreement was merged in the decree so that plaintiff may be said to seek to recover moneys paid pursuant to the agreement rather than for moneys paid in compliance with the mandate of the decree.
The judgment appealed from should be modified to the extent of granting a new trial as to defendant Rose G. B-, with costs to plaintiff to abide the event, and as so modified affirmed.
Pette and Hart, JJ., concur.
Judgment modified, etc.