LAKE VIEW BREWING CO. v. COMMERCE INS. CO. OF ALBANY.

(Supreme Court, Appellate Division, Fourth Department. March 8, 1911.)

1. INSURANCE (§ 143*)—CONTRACTS—REFORMATION.

The rules as to the reformation of written instruments apply to an insurance policy in the same manner as to other contracts.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 265–272; Dec. Dig. § 143.*]

2. REFORMATION OF INSTRUMENTS (§ 16*)—GROUND—MISTAKE.

In order to reform a written contract, it must convincingly appear that there has been a mutual mistake, or a mistake by one party coupled with fraud or deception by the other party.

[Ed. Note.—For other cases, see Reformation of Instruments, Cent. Dig. §§ 68–80; Dec. Dig. § 16.*]

3. INSURANCE (§ 143*)—CONTRACT—RIGHT TO REFORMATION.

While the legal title of property on which plaintiff held a second mortgage was in L., several policies were issued to L., the loss payable to the first mortgagee first, and then to plaintiff. Afterwards plaintiff purchased the property on foreclosure, and directed an insurance agent

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

"to put another $1,000 on the L. property," and the policy sued on was issued by defendant at the agent's request in the same form as the former policies which ran to L., and the agent, who had not been informed of the change of ownership, delivered the policy to plaintiff, by whom it was retained. The insurance company's entry showed that the mortgagee clause had been erased in the policy sued on, but the reason for the erasure did not appear. *Held*, that plaintiff was not entitled to have the policy reformed so as to make the loss payable to it as owner; the form in which the policy was made out having resulted from its negligent omission, and not from any mutual mistake.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 265–272; Dec. Dig. § 143.*]

Williams, J., dissenting.

Appeal from Equity Term, Erie County.

Suit by the Lake View Brewing Company against the Commerce Insurance Company of Albany, N. Y. From a judgment for plaintiff, defendant appeals. Reversed, and new trial ordered.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Vernon Cole (Shire & Jellinek), for appellant.

Francis E. Bagot (Brendel, Standart & Bagot), for respondent.

SPRING, J. This action is in equity to reform a policy of insurance issued by the defendant to A. M. Lorenz on the 25th of November, 1907, and to recover upon the policy when reformed.

In the spring of 1906 Lorenz owned and occupied the premises insured, which consisted of a saloon and dwelling house in the village of Depew, county of Erie, and they were subject to a mortgage held by one Wertheimer. While Lorenz was the owner, the plaintiff, a brewing corporation of the city of Buffalo, loaned to him the sum of $1,500, and again $300, which money was expended by him in the erection of a building on the premises. As security for these loans, Lorenz executed and delivered to the plaintiff two bonds secured by two mortgages on the property, one of $1,500 and one of $300. On the 9th of May, 1906, a policy of insurance for the sum of $1,500 was issued to Lorenz on the building, "loss, if any, payable to Clara Wertheimer first, and Lake View Brewing Company, second." This policy expired May 9, 1907.

The Wertheimer mortgage was foreclosed, and at the foreclosure sale the plaintiff purchased the property, obtaining a referee's deed April 3, 1907, and went into possession and made improvements thereon. On the 9th day of May, 1907, the president of the plaintiff applied to an insurance broker named Trapp to secure the renewal of the policy expiring on that day, which he did from the company which first issued it, and to A. M. Lorenz, the same as the first policy. A year later there was a like renewal in precisely the same form, and each policy was delivered to Mr. Trapp and by him to the plaintiff.

On the 25th of November, 1907, the president of the plaintiff, over the telephone, requested Mr. Trapp, the insurance broker, "to put an-

.other thousand dollars on the Lorenz property." In response to this direction Trapp communicated over the telephone with an agent of the Union Fire Insurance Company, which was also an agent of the defendant, and the policy in suit was issued, conforming in form to those theretofore issued. This policy was delivered to Mr. Trapp, who examined the same and delivered it to the plaintiff, by whom it was retained, and without examination, until after the building was wholly destroyed by fire June 21, 1908. None of the policies referred to is in the record. The entries of the Union Fire Insurance Company show that the mortgagee clause in the policy issued by it after the plaintiff became vested with the title was erased, and also in the renewal of the same; but the reason for these erasures does not appear.

The secretary of the company issuing these policies testified on this subject as follows:

"I have no personal knowledge whether it was erased prior to the delivery of the policy or not, but I should say it was erased by some of the employés of the office. The striking out of that clause indicates in this instance that either there was an error made in the writing of the policy, or else the policy was returned to have the clause taken off."

The same clause was attached to the contract in suit and then erased, as the records of the company disclose.

Trapp was the agent of the plaintiff, and not of the defendant. The president of the plaintiff was in the habit of advising Trapp when he wished insurance issued on any of the property of the plaintiff, specifying the amount desired, but not mentioning the company where the insurance was to be procured. That matter was left to the discretion of Trapp. The latter did not know at the time any of these policies were issued that the plaintiff was the owner of this property. He assumed that the title was still in Lorenz, and when he applied for the policy in suit he simply asked for an additional $1,000 insurance on the Lorenz property. The first policy issued at the instance of the plaintiff on this property was correctly issued to Lorenz and the loss payable to plaintiff as mortgagee. The subsequent policies were in the same form. The premium was paid by Trapp, and he rendered a statement therefor to plaintiff, and there was no communication between the plaintiff and the defendant, except through Trapp, and the only knowledge the agent had as to the ownership of the property, or of any of the facts pertaining to it, aside from that contained in the simple direction of Trapp, was the records of the Union Fire Insurance Company which were kept in the office of the defendant. These facts are undisputed and are found by the court either in the original findings or at the request of the defendant.

I think the plaintiff was not entitled to a reformation of the contract. When the defendant was apprised that the policy on the Lorenz property, which had been the designation several times, applied to it and the ownership of Lorenz recognized in previous policies, the defendant was justified in assuming, in the absence of any other explanation or suggestion of change in ownership, that Lorenz was still the owner. The applicant for insurance possesses the knowledge of

the title and of the other facts essential to give validity to the contract of insurance, and the responsibility of imparting that information to the other party to the contract is primarily with him.

There was no fraud and no mutual mistake. An insurance contract is no different from any other when the rules of law governing in the reformation of written agreements are to be applied to it. The rule is elementary that, before the court will reform a written contract, the proof must convincingly establish that there has been a mutual mistake, or a mistake by one party and fraud or deception by the other party. Bartholomew v. Merc. Ins. Co., 34 Hun, 263, affirmed 107 N. Y. 623, 13 N. E. 939; Mead et al. v. Westchester F. Ins. Co., 64 N. Y. 453; Curtis v. Albee, 167 N. Y. 360, 364, 60 N. E. 660; Christopher St. R. R. Co. v. Twenty-Third St. R. R. Co., 149 N. Y. 51, 58, 43 N. E. 538.

In the case first cited, the plaintiff applied to an agent of the defendant for insurance upon a stock of goods owned by him. The policy was issued to John H. Miller on the assumption that he was the owner of the property, and the loss was made payable to him "as his interest in equity may appear." A loss occurred, and the plaintiff sued to reform the policy and recover the loss sustained. He testified he told the agent the policy was to be issued to him and loss payable to Miller to secure him on a loan. On the vital questions the agent contradicted the plaintiff, who recovered; but a new trial was granted by the General Term. In discussing the principle to be applied in reforming a contract, the court used this language at page 265 of 34 Hun:

"And a fundamental rule in respect to this doctrine is that the evidence to show that a mistake had been made must be unquestionable (1 Story, Eq. § 157); 'irrefragable,' as said by Lord Thurlow, in Lady Shelburne v. Inchiquin, 1 Bro. C. C., 338; so clear and convincing as to leave no room for doubt; * * * proved as much to the satisfaction of the court as if admitted."

And Judge Rapallo, writing for the reversal of a judgment reforming an insurance contract, thus succinctly stated the rule in Mead et al. v. Westchester Fire Insurance Co., 64 N. Y. at page 455:

"The power of courts of equity to reform written instruments is one in the exercise of which great caution should be observed. To justify the court in changing the language of the instrument sought to be reformed (except in case of fraud), it must be established that both parties agreed to something different from what is expressed in the writing, and the proof upon this point should be so clear and convincing as to leave no room for doubt. Losing sight of these cardinal principles, in the administration of this peculiar remedy, would lead to the assumption of a power which no court possesses, of making an agreement between parties to which they have not both assented."

The company becoming a party to a contract of insurance is entitled to know whose property it indemnifies against loss by fire. It may wish to reject the application because the reputation of the owner materially adds to the hazard assumed, or some other reason may induce it to decline to enter into the agreement. The policies previously issued upon the application of Trapp had been retained without objection, and the defendant was justified in following the form of these

policies. There was no suggestion that the plaintiff was the owner of the property. Even its own agent who attended to its insurance business to a considerable extent was not informed that the plaintiff's interest as mortgagee had been merged in the fee title. Nor does the excuse of not reading the policy obtain in this instance. Trapp, the representative of the plaintiff, especially qualified by his business to pass upon the form and acceptability of a contract of this kind, examined the policy before delivering it to his principal, and it was satisfactory to him. A succession of careless omissions on the part of the officers of the plaintiff is responsible for the unfortunate condition presented. It held in its possession several policies issued to Lorenz after he ceased to have any interest in the property. It failed to inform its own agent that it owned the property, and although it was prompt to secure a renewal of the policy after it became the owner, in the direction to him to obtain the insurance referred to the property as that of Lorenz without any intimation that he was not the owner and it the mortgagee. Its officers did not read any of the policies, but relied upon Trapp to ascertain that they were satisfactory and without giving him the information necessary to make the examination effective. The erasures in the policies are not explained. Whether they appear in the contracts delivered to the plaintiff, the record does not disclose. Probably not, for they would have attracted the attention of Trapp, we may assume. Oral proof on the part of the plaintiff might have been pertinent in explanation of these erasures. The mere fact that they appear in the entries of the insurance companies sheds no light on the ownership of the property.

The judgment should be reversed.

Judgment reversed, and a new trial ordered upon the law and facts, with costs to appellant to abide event. All concur, except WILLIAMS, J., who dissents.