### FITZGERALD v. ARCADE THEATER CO.

(Supreme Court, Equity Term, Erie County. May 29, 1915.)

1. REFORMATION OF INSTRUMENTS ⊙⊃16—RIGHT TO REFORMATION.

The right to reform a contract reduced to writing is predicated on the existence of a prior oral agreement, which the written contract fails to properly express, and when no definite agreement was reached by the parties, who accepted the written instrument, they were bound thereby, in the absence of fraud.

[Ed. Note.—For other cases, see Reformation of Instruments, Cent. Dig. § 68; Dec. Dig. ⊙⊃16.]

2. REFORMATION OF INSTRUMENTS ⊙⊃19—GROUNDS—MUTUAL MISTAKE—EVIDENCE.

To reform a contract on the ground of mistake, the mistake must be mutual and established by clear, positive, and convincing proof.

[Ed. Note.—For other cases, see Reformation of Instruments, Cent. Dig. §§ 74–78; Dec. Dig. ⊙⊃19.]

3. REFORMATION OF INSTRUMENTS ⬸45—MUTUAL MISTAKE—EVIDENCE—SUF··
   FICIENCY.
      Evidence *held* not to justify reformation of an instrument on the ground
   of mutual mistake.
      [Ed. Note.—For other cases, see Reformation of Instruments, Cent. Dig.
   §§ 157–193; Dec. Dig. ⬸45.]

Action by William D. Fitzgerald against the Arcade Theater Company. Judgment ordered.

Carlton Ladd, of Buffalo, for plaintiff.

Cromley & Gittins, of Niagara Falls, and Edward R. O'Malley, of Buffalo, for defendant.

WHEELER, J.   This action is brought to recover damages for the breach of a contract between the parties to the action. One of the defenses interposed is an equitable one, by which the defendant seeks to reform the contract sued on. The contract in question provided for the playing of a musical comedy company at the defendant's theater in Niagara Falls during the summer season of 1912. By the contract the defendant agreed to pay the plaintiff for the services of this company at the rate of $1,250 per week.

The defendant alleged in its answer that this contract did not express the real agreement of the parties, which in fact was that said weekly compensation was only to be paid out of the box receipts of the theater. In other words, instead of there having been an absolute agreement for the payment of $1,250 per week, the plaintiff's compensation was dependent on the success of the production, and the theater taking in that amount. The defendant therefore asks for a reformation of the contract to comply with the alleged verbal arrangement. The plaintiff, by reply, denies the defendant's allegations, and the issue thus framed comes before the equity branch of this court for determination.

In our opinion, the evidence shows that the minds of the parties never met in any verbal agreement. Mr. Hayman and Mr. Fitzgerald had talks at Utica in anticipation of entering into an agreement. A proposition or propositions were made, but Mr. Hayman and Mr. Fitzgerald differ as to the terms of this proposition, or these propositions, for the bringing of a theatrical company to Niagara Falls. However, no final or definite agreement was entered into. All that was said was simply tentative. Mr. Hayman, before accepting any proposition, had to consult others interested with him in the proposition. Mr. Fitzgerald so testified. This view of the case seems to be borne out by the letter of Mr. Fitzgerald to Mr. Hayman of April 9, 1912, in which, among other things, he writes, "I wish you would advise us if you are to go ahead with the proposition," indicating very clearly that no final agreement had been, at that time reached.

In this connection, it should be noted that on April 4, 1912, before the writing of the letter of the 9th, Mr. Fitzgerald had drawn and forwarded a proposed contract to be executed by the defendant. In-

---

⬸For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

stead of accepting and signing this contract, the defendant, through Mr. Hayman, had another contract prepared by its own attorney, which embodied other provisions than those contained in the one sent on by the plaintiff. This contract was forwarded to the plaintiff, and he in turn raised objections to certain provisions in it, and returned the papers unsigned, with a letter stating the objections. Thereupon the agreement was redrawn once more, and the objectionable features eliminated, and as thus redrafted was executed by the parties, and is the instrument which is sought to be reformed, as not expressing the agreement of the parties.

[1] These facts justify the court in its assertion that there never existed a definite verbal understanding between the parties. The terms of the agreement were never fixed until the written contract in suit was executed. Until that was done, neither party was legally bound by any of the prior negotiations, for the reason that the minds of the parties had never met. Under such conditions, we are unable to see how the basis for a reformation has been established. All the prior negotiations in effect amounted to propositions and counter propositions by the parties, all of which were finally merged into the agreement actually signed.

The right of reformation is predicated on the existence of a prior oral agreement which the written instrument fails properly to express. When no final and definite agreement has been reached by the parties, but the subject-matter of the contract rests in negotiation, and then one of the parties tenders a written instrument for the acceptance and signing by the other, and it is executed as tendered and drawn, can it be said that the agreement so tendered failed to express the agreement of the parties, and is the subject of reformation, even though, as written, it in fact varies from some of the matters previously discussed and apparently assented to? We think the party accepting such an instrument so tendered has the right to insist on the terms of the contract as written, in the absence of fraud and deceit, and it cannot be claimed that there was mutual mistake of the parties, for, unless the mistake is the mistake of both, there can be no reformation.

[2 3] Even though the views above expressed are not correct, nevertheless in this case the evidence produced upon the trial does not, in our judgment, warrant a decree reforming the instrument in the particulars demanded.

The defendant's claim, in substance, is that in the talk with the plaintiff at the city of Utica, where the defendant's representative went to interview the plaintiff, it was agreed that the plaintiff was to receive the sum of $1,250 per week for the services of his theatrical company, to be paid out of the box receipts of the theater. The plaintiff claims he was to be paid that amount, without regard to the amount of the box office receipts. Hayman, the defendant's president and representative, testifies to the truth of the defendant's claim, and the plaintiff testifies as positively to the truth of his position. In the draft of the agreement sent by the plaintiff to the defendant, which was never executed, the instrument in effect makes the compensation contingent on the box receipts equaling the amount to

be paid. This draft, to that extent, tends to corroborate the defendant's version. On the other hand, the second draft, tendered by the defendant to the plaintiff, provided for the absolute payment of $1,250, per week. To that extent this proposed instrument corroborates the plaintiff's claim. This paper was not, however, accepted, and a third agreement, caused to be drawn by the defendant, was then sent to the plaintiff and signed by him, and this instrument in terms provided for the absolute payment of the sum of $1,250 per week for the services of the theatrical company.

Mr. Hayman, the defendant's officer and representative, testifies that the latter two agreements were never read by him, but were redrafted by his attorney, and he signed for the defendant in ignorance of the fact that in the particular in dispute it in any way differed from the first draft forwarded by the plaintiff. Such testimony invites the just criticism of the plaintiff's counsel that it is quite remarkable that in a contract of this importance the defendant's president, Mr. Hayman, should not have read over and acquainted himself with its provisions. He does not claim to have discovered the error until the performance had been on the boards some time, and the agreement was not questioned until it developed that the production was not to be a financial success to the defendant. All these facts, while not conclusive, at least tend to throw discredit on the claims of the defendant.

Without discussing the evidence further, it is sufficient to say that, in view of all the testimony and circumstances, we are of the opinion that the court cannot reform the agreement in question without violating the rules of law governing such cases. In order to warrant a reformation, the mistake must be mutual, and the evidence of such a mistake must create more than a probability, and amount to more than a mere preponderance of evidence, but must carry the conviction of a certainty of error. Weed v. Whitehead, 1 App. Div. 192, 37 N. Y. Supp. 178.

To reform an instrument, the evidence of a mistake must be clear, positive, and convincing that the mistake was mutual and made by all parties to the instrument. Christopher St. Ry. Co. v. 23d St. Ry. Co., 149 N. Y. 58, 43 N. E. 538; Shattuck v. Bascom, 55 Hun, 14–17, 9 N. Y. Supp. 934; Howland v. Blake, 97 U. S. 626, 24 L. Ed. 1027; Erwin v. Curtis, 43 Hun, 292. In Lake View Brewing Co. v. Commerce Insurance Co., 143 App. Div. 665, 128 N. Y. Supp. 337 (Fourth Department) the court cites Bartholomew v. Mercantile M. Ins. Co., 34 Hun, 265, quoting as follows: .

"And a fundamental rule in respect to this doctrine is that the evidence to show that a mistake had been made must be unquestionable (1 Story Eq. § 157); 'irrefragable,' as said by Lord Thurlow, in Lady Shelburne v. Inchinquin; so clear and convincing as to leave no * * * doubt; * * * proved as much to the satisfaction of the court as if admitted."

We need cite no further cases, of which the books are full, holding substantially the same doctrine. It is sufficient to say, in the disposition of this case, that the evidence does not meet the requirements, so as to warrant the reformation asked, and must therefore be denied.

A decision may be drawn, and an interlocutory decree entered, in conformity with this view; the costs of the trial of this issue to abide the event in the trial and disposition of the remaining issues of the action.

So ordered.