ANNA H. AMEND et al., as Executors of ANNA E. HOFFMANN, Deceased, and as Administrators with the Will Annexed of the Estate of GEORGE J. HOFFMANN, Deceased, Appellants, *v.* ANDREW J. HURLEY, Respondent.

Argued November 21, 1944; decided December 30, 1944.

*John P. McGrath, Thomas J. Kavanagh* and *Joseph A. McNamara* for appellants.   I. Respondent failed to establish any right to relief by way of reformation.   (*Susquehanna S. S. Co.* v. *Andersen & Co.,* 239 N. Y. 285; *Walton Water Co.* v. *Village of Walton,* 238 N. Y. 46; *Fitzgerald* v. *Arcade Theatre Co.,* 153 N. Y. S. 618, 172 App. Div. 932; *Salomon* v. *North British & M. Ins. Co.,* 215 N. Y. 214; *Bernstein* v. *Kritzer,* 253 N. Y. 410; *Bloom* v. *Guardian Life Ins. Co.,* 264 App. Div. 866; *Union Trust Co.* v. *Boardman,* 215 App. Div. 73, 246 N. Y. 627.)   II. A mistake to justify reformation must be an excusable mistake.   (*Hayward* v. *Wemple,* 152 App. Div. 195, 206 N. Y. 692; *Metzger* v. *Ætna Ins. Co.,* 227 N. Y. 411; *154 West 14th St. Co.* v. *D. A. Schulte, Inc.,* 121 Misc. 853, 210 App. Div. 851; *Matter of Denison,* 255 App. Div. 294, 280 N. Y. 589; *Kirsch* v. *Giglio,* 263 App. Div. 882; *Metzger* v. *Ætna Ins. Co.,* 227 N. Y. 411; *Pimpinello* v. *Swift & Co.,* 253 N. Y. 159.)   III. Respondent's obligation to make designated payments from profits of the business until June 30, 1945, survived the death of the widow.   (*Matter of Brown,* 242 N. Y. 1; *People ex rel. Speyer* v. *Gilchrist,* 219 App. Div. 155, 245 N. Y. 609; *Matter of Witkind,* 167 Misc. 885; *Matter of Buccini* v. *Paterno Const.*

*Co.,* 253 N. Y. 256; *Kernochan* v. *Murray et al.,* 111 N. Y. 306; *Scheffer* v. *Erie Co. Savings Bank,* 229 N. Y. 50; *Francis* v. *Ferguson,* 246 N. Y. 516; *Pink* v. *Title Guarantee & Trust Co.,* 274 N. Y. 167.) IV. The attempt to create an issue of fraud was without justification. (*Isaacs* v. *Schmuck,* 245 N. Y. 77; *In re Adams' Estate,* 45 N. Y. S. 2d 494, 48 N. Y. S. 2d 801; *Porter* v. *Commercial Cas. Ins. Co.,* 292 N. Y. 176; *Rothmiller* v. *Stein,* 143 N. Y. 581; *Dambmann* v. *Schulting,* 75 N. Y. 55.) V. The Appellate Division erred in granting respondent's plea for reformation. (*Lewitt & Co., Inc.,* v. *Jewelers' Safety F. Soc.,* 249 N. Y. 217; *Susquehanna S. S. Co.* v. *Andersen & Co.,* 239 N. Y. 285; *Welles* v. *Yates,* 44 N. Y. 525; *Bryce* v. *Lorillard Fire Ins. Co.,* 55 N. Y. 240; *Conlew, Inc.,* v. *Uhler,* 239 App. Div. 380; *Matter of White,* 182 Misc. 223, 268 App. Div. 759.)

*Lester Kissel, James B. M. McNally, Chauncey B. Garver* and *Michael J. De Santis* for respondent. I. Reformation of the instrument was properly granted to include the omitted provision that payments were to terminate on the death of the widow. The mistaken omission from the written instrument of an important provision of the agreement is ground for reformation. (*Pitcher* v. *Hennessey,* 48 N. Y. 415; *Born* v. *Schrenkeisen et al.,* 110 N. Y. 55; *Baird* v. *Erie R. R. Co.,* 210 N. Y. 225; *MacDonald* v. *Crissey,* 215 N. Y. 609; *Susquehanna S. S. Co.* v. *Andersen & Co.,* 239 N. Y. 285; *Hart* v. *Blabey,* 287 N. Y. 257; *Friedman Marble & Slate Works, Inc.,* v. *Whitcomb,* 186 App. Div. 509; *Woolf* v. *Barnes,* 46 Misc. 169, *Unger* v. *Weisner,* 129 Misc. 363; *Albany City Savings Institution* v. *Burdick,* 87 N. Y. 40.) II. Failure of the widow's attorney to correct the mistake although he had knowledge thereof, compelled reformation of the instrument. (*Welles* v. *Yates,* 44 N. Y. 525; *Stryker* v. *Schuyler,* 51 Hun 637, 132 N. Y. 547; *Trenton Terra Cotta Co.* v. *Clay Shingle Co.,* 80 F. 46; *Columbian Nat. Life Ins. Co.* v. *Black,* 35 F. 2d 571; *Davis* v. *Reisinger,* 120 App. Div. 766; *Gillett* v. *Borden,* 6 Lans. 219.) III. Where one of the parties to a contract is laboring under a mistake and the other party is aware of the mistake and takes advantage of it, his conduct is so unconscionable that equity will prevent enforcement of the contract. Thus, aside from any reformation of the instru-

ment, the third defense in defendant's answer is valid and precludes enforcement of the provision of the instrument in question. (*Born* v. *Schrenkeisen*, 110 N. Y. 55; *City of New York* v. *Dowd Lumber Co.*, 140 App. Div. 358; *Barteldes Seed Co.* v. *Bennett-Sims Mill & Elevator Co.*, 161 S. W. 399; *Everson* v. *International Granite Co.*, 65 Vt. 658; *Hume* v. *United States*, 132 U. S. 406.) IV. The agreement, as expressed in the written instrument, was of a personal nature and terminated upon the death of the widow. (*Lorillard* v. *Clyde et al.*, 142 N. Y. 456; *Matter of Daly*, 58 App. Div. 49; *Arming* v. *Steinway*, 35 Misc. 220; *Matter of Witkind*, 167 Misc. 885.) V. Defendant's undertaking to make periodic payments to the widow was without consideration. (*Matter of Borden*, 95 Misc. 443; *Jenner* v. *Shope*, 205 N. Y. 66; *Vanderbilt* v. *Schreyer*, 91 N. Y. 392; *Carpenter* v. *Taylor*, 164 N. Y. 171; *Ryan* v. *Ward et al.*, 48 N. Y. 204; *McGovern* v. *City of New York*, 234 N. Y. 377.)

RIPPEY, J. George J. Hoffmann died June 10, 1937, then being the owner and proprietor of a sugar-weighing business in the city of New York which he had operated successfully and with large profits for more than thirty years under the trade name and style of " George J. Hoffmann & Company ". For most of that time and at the time of his death, defendant was employed by Hoffmann on a yearly salary which included 37½% of the profits in the conduct of that business during the latter part of his employment. By the terms of his will, which was admitted to probate, Hoffmann left his whole estate to his wife, Anna E. Hoffmann, and named her executrix thereof. She qualified as executrix and acted in that capacity until her death which occurred on April 3, 1940. She left a will in which plaintiffs Amend and McNamara were named executors. They qualified as such upon the probate of her will and also were named administrators with the will annexed of her husband's estate and have since been acting as such.

From the time of Hoffmann's death, defendant actively sought to acquire and to operate his previous employer's business for himself alone and demonstrated no intention to continue to operate it for the estate. Matters reached a point when, on July 12, 1937, Mrs. Hoffmann had a conference with him with reference to his continuance of the business in behalf of the

estate and he then notified her, definitely for the first time, that he would not act as manager of the business but was interested only in acquiring the business as his own. He then offered to pay her 50% of the profits of the business provided he should become the owner and should be allowed to run it entirely by himself, she to have no other interest. No agreement was reached at that conference between the parties and from that time on negotiations were carried forward principally between Joseph A. McNamara, attorney for Mrs. Hoffmann individually and for her husband's estate, and George W. Sheldon, a man of long practice and a member of one of the leading law firms of New York City, as attorney for Hurley.

A series of verbal conferences and written correspondence followed between the attorneys, who from time to time advanced various differing suggestions and proposals in behalf of their respective clients in an effort to reach an agreement, all without success. In that situation, it was agreed between the attorneys on July 26, 1937, that McNamara should draft a proposed agreement and submit it to Sheldon for examination. That he did in typewritten form on the same day. In this draft, the termination of the agreement was fixed for June 30, 1945. McNamara, however, tentatively provided alternatively with other provisions for his client's benefit, in article X " that in the event of the death of the party of the first part [Mrs. Hoffman] prior to July 1st, 1945, this agreement shall cease and terminate and all interest of the party of the first part thereunder come to an end as of the date of the death of the party of the first part. In the event, however, of the death of the party of the second party [Hurley] subsequent to July 1st, 1942, this agreement shall also cease and come to an end and all the rights of the party of the first part terminate as of the date of such death. Should the party of the second part die prior to July 1st, 1942, then and in such event there shall be due and payable and the party of the second part hereby grants a claim on his estate to the party of the first part in the sum of Twenty-five Thousand ($25,000.00) dollars ". Clauses followed in that article authorizing defendant to elect to provide and to substitute life insurance for $25,000 on his life in place of the absolute claim in cash for that amount against his estate in the event of his death prior to July 1, 1942. The draft contained eleven separately

numbered articles. After editing the draft to his satisfaction, Sheldon returned it to McNamara. Every one of the articles contained some changes, deletions, or additions in Sheldon's handwriting in ink, or, in some cases, a rider was attached, affecting not only the form but the substance of the article to which the same was applicable. When returned, it evidenced extensive and exhaustive examination by Sheldon and care on his part for the utmost of protection of his client's interests with carefully drawn provisions for his benefit which were not contained in McNamara's draft. There was no evidence that he had missed any opportunity to drive a good bargain for his client. Among other things, he drew lines through the entire part of article X quoted above and wrote opposite that part of the draft on the margin in large letters the word "No" and heavily underscored it. He made changes in the clauses relating to life insurance designed to protect Mrs. Hoffmann against losses under the contract. Thereupon the draft with its changes was sent to McNamara who retyped it *verbatim* with all changes and additions made by Sheldon, except in three minor particulars which did not change the wording, substance or effect of article X as re-prepared by Sheldon. Otherwise, neither in punctuation, words nor substance did the retyped instrument vary in any particular from the draft as edited by Sheldon. McNamara then presented the completed contract to Mrs. Hoffmann who discussed it at length with her attorney. She was not satisfied with the changes regarding life insurance protection against the death of Hurley before July 1, 1945, but finally acceded to the changes made by Sheldon and executed the final draft in duplicate on July 28, 1937. The agreement so executed was then delivered to Sheldon who presented it to his client who signed it in duplicate and one of the duplicate copies was given to McNamara.

So far as important here, the final agreement as executed by and delivered between the parties on July 28, 1937, provided that Mrs. Hoffmann, individually and as executrix of her husband's estate, should pay Hurley a doubtful claim he had made against the estate for $55,000 together with 37½% of the profits of the business between January 1, 1937, and the date of Hoffmann's death, and should transfer the Hoffmann business, trade name and good will to Hurley and assist the latter, as neces-

.sary, to collect all of Hoffmann's outstanding business accounts for his own use. Hurley agreed to pay to Mrs. Hoffmann $125 per week to and including June 30, 1945, provided the net profits of the business were equal to or greater than $13,000 per year and in lesser amounts if the profits were less than that sum and, in addition, 25% of the net profits in excess of $26,000 per year together with $3,000 for the good will and assets of the business and to assume the lease of Hoffmann's business establishment for its unexpired term.

Both parties fully performed the contract, without objection or question by either, until the death of Mrs. Hoffmann. The business under Hurley's operation continued to be profitable. Hurley, previous to her death, accounted for the profits and paid to Mrs. Hoffmann from the profits some $20,634. After her death he refused to perform further and this action was thereupon brought for specific performance.

The defense was a mistake on the part of Sheldon and fraud on the part of McNamara. Defendant claimed that his attorney inadvertently and mistakenly struck out from the McNamara draft the first sentence of article X, that McNamara knew this was inadvertently stricken out and failed to correct the mistake on copying the agreement in final form or to notify Sheldon of his mistake and that he, Hurley, did not read the final agreement when he signed it relying on Sheldon's statement that it was all right. Accordingly defendant has asked that the agreement be reformed so as to provide that it should terminate on the death of Mrs. Hoffmann.

The Trial Judge, who saw Sheldon, Hurley and McNamara on the witness stand and heard them testify gave no credit to defendant's claim that the final written agreement did not express the true intention of the parties. The advantages of the trial court who saw and heard the witnesses should be considered and, when truth hangs upon the credibility of witnesses, his decision should be given the greatest weight (*Boyd* v. *Boyd,* 252 N. Y. 422, 429; *York Mortgage Corp.* v. *Clotar Const. Corp.* 254 N. Y. 128, 134; *Smith* v. *Smith,* 273 N. Y. 380, 383). The trial court found that the evidence established that there never existed any verbal agreement between the parties, that the draft by McNamara was satisfactory to Sheldon in neither form nor substance, that his counter-proposals were reflected in the changes, deletions and additions which he made to the McNa-

mara proposal, that McNamara accepted the counter-proposals, and that there was no meeting of the minds of the parties or any terms of agreement ever fixed until the formal written contract was executed. The Appellate Division, by a three to two vote, found to the contrary. We find that the weight of the evidence sustained the findings of the trial court. Defendant was a business man of experience and competence and adept in the understanding and use of the English language. Not to have read the contract or to have had it read to him before signing, if that be a fact as he testified, furnishes no basis for his repudiation of any of its terms (*Dambmann* v. *Schulting,* 75 N. Y. 55, 61; *Pimpinello* v. *Swift & Co.,* 253 N. Y. 159, 162–163).

Before defendant can be granted reformation, *he must establish his right to such relief by clear, positive and convincing evidence.* Reformation may not be granted upon a probability nor even upon a mere preponderance of evidence, but only upon a certainty of error (*Christopher St. R. Co.* v. *23d. St. R. Co.,* 149 N. Y. 51; *Salomon* v. *North British & M. Ins. Co.,* 215 N. Y. 214; *Susquehanna S. S. Co.* v. *Andersen & Co.,* 239 N. Y. 285; *Porter* v. *Commercial Cas. Ins. Co.,* 292 N. Y. 176). The quality of the evidence in this case does not meet that test. Nor may the defendant secure reformation merely upon a showing that he or his attorney made a mistake. In the absence of fraud, the mistake shown " must be one made by both parties to the agreement so that the intentions of neither are expressed in it " (*Salomon* v. *North British & M. Ins. Co., supra,* p. 219). The court may not compel the plaintiffs to be bound by a contract which their principal never made (*Curtis* v. *Albee,* 167 N. Y. 360, 365). Since the right to reform the contract here is not claimed on the ground of mutual mistake, reliance is based on the alleged mistake of Sheldon and of defendant and the alleged fraud of McNamara in not disclosing to Sheldon his knowledge that the mistake was made. Both courts below have held that there was no fiduciary relation existing between McNamara on the one side and Sheldon and Hurley on the other. The trial court held upon the overwhelming weight of the evidence that the parties were " dealing at arm's length ". There is no evidence that McNamara had any idea or knowledge that Sheldon had made a mistake. McNamara denies that he had either. To overcome that lack of evidence and the denial of McNamara and the inevitable consequence of

the facts as established, the court would be compelled, to hold the contrary, to examine into the innermost recesses of McNamara's mind which, at least, would be a hazardous undertaking (*Porter* v. *Commercial Cas. Ins. Co., supra*). Such a procedure may not here be undertaken in the face of the chain of events and the convincing facts. Were it otherwise " The law requires disclosure to be made only when there is a duty to make it, and this duty is not raised by the mere circumstance that the undisclosed fact is material, and is known to the one party, and not to the other, or by the additional circumstance that the party to whom it is known, knows that the other party is acting in ignorance of it " (*Peoples' Bank of City of New York* v. *Bogart*, 81 N. Y. 101, 107). It is not fraud for one party to say nothing on the subject where no confidential or fiduciary relation exists and where no false statement or acts to mislead the other are made (*Peoples' Bank of the City of New York* v. *Bogart, supra; Dambmann* v. *Schulting, supra*). In the circumstances in this case, a finding of fraud may not be predicated upon McNamara's failure to speak, whether or not he had knowledge of Sheldon's error, especially in view of the unreversed finding that he owed no fiduciary duty either to Sheldon or to the defendant. Having accepted and acted on the written instrument, in the absence of fraud and deceit or mutual mistake, defendant was bound by its terms as the only existing agreement between the parties even though it did not contain some provision on which the parties may have agreed during the negotiations (*Fitzgerald* v. *Arcade Theatre Co.*, 153 N. Y. Supp. 618, 630, affd. 172 App. Div. 932; *Metzger* v. *Aetna Ins. Co.*, 227 N. Y. 411, 416).

The contract was not personal to Mrs. Hoffmann since it contained no provision to that effect and its benefits survived for her estate as well as for the estate of her husband (*Kernochan* v. *Murray et al.*, 111 N. Y. 306; *Matter of Buccini* v. *Paterno Const. Co.*, 253 N. Y. 256, 259).

The judgment of the Appellate Division should be reversed and that of the Special Term affirmed, with costs in this court and in the Appellate Division.

LEHMAN, Ch. J., LOUGHRAN, CONWAY, DESMOND and THACHER, JJ., concur; LEWIS, J., taking no part.

Judgment accordingly.