Frank A. Gulotta, J.
This action for reformation is based upon a mutual mistake of fact. The Equitable Savings & Loan Association, a party defendant, likewise seeks to have its mortgage reformed in accordance with any decision or reformation made herein.
On December 3, 1938, the defendants O’Rourke became the owners of lots 5 and 6 on a certain map entitled 1 ‘ Land of John H. Brush, etc. ’ ’ located on Lawrence Street in Farmingdale, Nassau County, New York. Subsequent to the purchase, the testimony is that the O ’Rourkes had a survey made which indicated that the northerly boundary of lot 5 was located 100 feet south of an unopened street. Lots 5 and 6 ran from that point 50 feet south to the northerly boundary of lot 7 and encompassed a plot 50 feet on the east side of Lawrence Street by 100 feet in depth. No such survey was put into evidence. ■ However, a survey was received as plaintiffs’ Exhibit 6, dated June, 1943, showing a house on lots 5 and 6. This is the house which O’Rourke built and which plaintiffs now own. The survey is in error in showing the location of the house, which is actually on lots 6 and 7, although it correctly indicates that the northwest corner of lot 5 is 100 feet south of an unopened street. For some unexplained reason defendant constructed the house on *161 lots 6 and 7, the northwest corner of such plot being 125 feet south of the unopened street.
In July, 1946, the McGrivneys entered into negotiations to buy the premises above mentioned which was then known as No. 43 Lawrence Street. The McGrivneys intended to buy and the O’Rourkes intended to sell a plot of ground 50 feet by 100 feet which included that house and 3 feet of land to the north of it and 14 feet of land to the south of it. Defendants’ testimony confirms that this was the intention of both parties. Mrs. O’Rourke showed Mr. McG-ivney the survey, plaintiffs’ Exhibit 6, delineating the house on lots 5 and 6, but she also showed him a 20 or 25-foot row of lilac bushes some 3 feet to the north of the house, telling him those bushes would belong to him and constituted the northerly boundary of the parcel. She then showed him a stake and an iron pipe driven in the ground some 14 feet south of the house and told him that constituted the southerly boundary, thus outlining lots 6 and 7. The O’Rourkes believed these markers to constitute the outer boundaries of lots 5 and 6 and the deed to McGrivneys, dated August 1, 1946, recited the conveyance by these lot numbers. No one appears to have noticed that the house was 125 feet from the corner, 25 feet more than shown on the survey.
On November 1,1955, the McGrivneys conveyed to the plaintiffs, again by lot numbers, and they, in turn, on the same day, executed a mortgage to the South Brooklyn Savings & Loan Association (now The Equitable Savings & Loan Association) to secure a loan of $7,000. This mortgage described the premises as lots 5 and 6 and also gave an accurate metes and bounds description of these lots as they are.
In the meantime the O’Rourkes had acquired other property along Lawrence Street and because of a boundary dispute with some neighbors to the south, in 1957 they caused another survey to be made. It was then discovered for the first time that the O ’Rourkes had in fact built on lots 6 and 7 instead of 5 and 6 and that the boundaries they had pointed out to the McGrivneys in 1946 were in fact the boundaries of lots 6 and 7.
This action is resisted by the O’Rourkes on the ground that at the time of their conveyance to McGrivneys they did not own lot 7 and that this court cannot order reformation of a deed to include property which the grantor did not own. However, since the conveyance to McGrivneys the O’Rourkes acquired lot 7 and are the present owners thereof. It is well settled that the mere fact that one does not own or possess the subject matter at the time of making a contract does not of itself constitute the legal impossibility of performance which defeats relief, if *162 he acquires it subsequently, at, or before the hearing. (4 Pomeroy, Equity Jurisprudence [5th ed.], § 1405b.) In equity it is sufficient if the defendant has title to the property at the time of trial (Brown v. Haff & Lyon, 5 Paige Ch. 235), and by a parity of reasoning this same principle should apply to an action for a reformation. It has been held, generally, that a court of equity will adapt its relief to the state of facts existing at the time of entry of a final decree (30 C. J. S., Equity, § 600). Cases are legion reciting the axiom that equity will administer such relief as the exigencies of the case demand at the close of the trial and that when a decree in equity is made it speaks with reference to the facts, the law and the equities then existing. (Lightfoot v. Davis, 198 N. Y. 261, 273; Bloomquist v. Farson, 222 N. Y. 375, 380; Kilbourne v. Board of Supervisors, 137 N. Y. 170, 178; Curtiss-Wright Corp. v. Village of Garden City, 270 App. Div. 936; Hoffman v. Ronan Co., 275 App. Div. 57; Matter of Galewitz, 3 A D 2d 280.) While these cases seem to relate to changes in circumstances between the time of the commencement of the action and final decree, the same reasoning should apply to any changes which have occurred between the happening of the event, which is the subject matter of the litigation, and a decree, where such changes bear directly on the issues and will permit equity to do justice on the facts as they exist at the time of trial. This is such a case and the court will therefore take into consideration the fact that the O ’Bourkes presently own lot 7.
A defense of the 10-year Statute of Limitations has also been interposed. While the incident in question occurred in 1946 it was stipulated on the record that none of the parties became aware of the mistake until 1957. During the period 1946 to the present, plaintiffs and their predecessors in title were in possession of the disputed premises under an instrument of title. Under those circumstances, the statute did not begin to run against the right to reform that instrument until they had notice of a claim adverse to theirs under the instrument, or until their possession was otherwise disturbed (Hart v. Blabey, 287 N. Y. 257, 263). The Statute of Limitations is not, therefore, a valid defense to this action.
Both the O’Bourkes and McG-ivneys were agreed as to what was to be conveyed. Each honestly believed that this property was contained in lots 5 and 6. In this assumption they were mutually mistaken. Under such circumstances equity has the power to grant relief. (Salomon v. North British & Mercantile Ins. Co., 215 N. Y. 214, 219; Amend v. Hurley, 293 N. Y. 587, 595.) The defendant is in error in asserting that she could not *163 have had an intent to convey lot 7 in 1946 as a matter of logic, because she did not in fact own it at that time. The two concepts are not interrelated, nor do they depend on each other, and the intent may exist irrespective of the ability or capacity to carry it out.
The case of Bush v. Hicks (60 N. Y. 298) is somewhat analogous to the case at bar. The location and boundaries of the land were pointed out by the grantor to the grantee and all parties understood the land to be bought and sold lay within those boundaries. In the deed to the grantee the grantor correctly copied a description contained in a former deed which he honestly believed described the property to be sold. However, because of a misapprehension as to the location of the corner of a certain lot the description in both deeds described other land. The mistake consisted in supposing the description applied to the land intended to be conveyed, whereas it contained much more. In holding that a mutual mistake of this character is a ground for reforming a deed the court said (p. 302): “ Although the parties understood what language was contained in the deed, if they believed the description corresponded with the actual boundaries of the land intended to be conveyed, and were mistaken, the case for a reformation was made out.”
Simms v. Simms (139 Misc. 726) was also an action for the reformation of two deeds. In that case decedent purchased two identical, adjacent lots — No. 132 and No. 133 — on the installment plan. Before completing payment for the lots he received permission to construct a house on the property. He filed plans to build a one-family house on lot No. 132. By mistake the house was built on lot No. 133. Decedent intended to build and thought the house was built on lot No. 132. While the house was under construction, decedent went to the attorney for the vendor and instructed him to make out a deed to lot No. 132 to his wife and a deed to lot No. 133 to his son. Upon completion of the house, decedent and his wife moved into the house built on lot No. 133 insteád of No. 132 and lived there until decedent’s death. In the meantime the son entered upon lot No. 132, built a bungalow on it and lived there. Upon his father’s death the son claimed title to the house on lot No. 133 under his deed and asserts that under her deed decedent’s wife was entitled to the lot and bungalow on lot No. 132. The latter brought an action for a reformation. The proof indicated that the decedent intended to give his wife the lot on which the house was built and to give his son the vacant lot. The court in granting a reformation said (p. 728): “ Under those circumstances equity not only has the right, it is under a duty to correct the mistake *164 which has been made. Neither principle nor precedent stands in the way of affording the relief necessary to give effect to the true intent of the parties and thus to accomplish a just result. This is indeed a case where ‘ the plastic remedies of the chancery are moulded to the needs of justice. ’ (Foreman v. Foreman, 251 N. Y. 237, 242.) The two deeds will accordingly be reformed. ’ ’
Judgment is granted in favor of the plaintiffs in accordance with this opinion, which will constitute the decision of the court under section 440 of the Civil Practice Act. Settle judgment on notice providing in detail for the reformation of the specific instruments involved in this litigation and directing the County Clerk to make appropriate entries in the real property records of his office. Intervening rights, if any, of any persons who are not parties to this litigation will be unaffected by said judgment.
Costs are disallowed. Motions are decided in accordance with this opinion.