Fboessel, J. (dissenting).
We dissent and vote to reverse, and to reinstate the final and interlocutory judgments of the Official Referee insofar as appealed from, upon the ground that the weight of the evidence clearly and convincingly supports the determination of said Referee rather than that of the Appellate Division.
The action is for reformation of a restrictive covenant entered into in connection with a contract of sale, and for other relief. The restrictive covenant as written is set forth in the prevailing opinion. It was reformed so as to relate not only to the manufacturing or selling of Chinese condiments “under any trade name heretofore employed ” by Food Specialties, Inc., but also to such condiments manufactured or sold “ under any other trade name ”. It was concededly limited in place to the United States and in time to a period of two years.
There is no dispute that defendant Jerome Stein, an attorney, who signed the contract on behalf of Food Specialties, Inc., acknowledged that the covenant as reformed was the one agreed upon. He also testified unequivocally that the defendant “ Mr. Godston said he would sign a restrictive covenant limiting him from engaging in the business of manufacturing or selling Chinese condiments anywhere in the United States for a period of two years Harold Goldman, the principal stockholder of Food Specialties, Inc., testified similarly.
Godston was president and general manager and practically in charge of all the affairs of Food Specialties, Inc., though he had no stock interest therein. He owned a half interest in defendant Westbury Products Corp. He at first was disinclined to sign the restrictive covenant, but, when Goldman promised to pay him the sum of $10,000, Godston agreed.
The covenant as originally written was pointless, because plaintiff, Ross, paid $85,000 for the Food Specialties business, which included the latter’s trade names, trade-marks, copyrights, designs and formulas, together with the good will *343 attached thereto; its stock, inventory and equipment. Since he purchased these rights, he did not need a restrictive covenant from Stein or Godston, officers of Food Specialties, Inc., as to the “ Chinese condiments under any trade name heretofore employed by the Party of the First Part ”. The only sensible purpose of the covenant was to include Chinese condiments not under such trade name.
Godston recognized the mistake promptly, for a day or two after the closing on February 2, 1955 he consulted a lawyer concerning the scope of the covenant and then saw two other lawyers. He then learned he had not tied “ a rope around [his] neck ”. While it is true that he denied that there was a mistake, that does not make the evidence of plaintiff’s witnesses any less clear and convincing. If he had admitted it, there would of course have been no litigation.
Godston had first been offered the opportunity of purchasing said business by Goldman, the principal stockholder, but he declined. Goldman then asked him to help sell it to Boss, for which Godston was paid $10,000. As soon as the sale to Boss had been made, Westbury Products Corp., in which Godston had a half interest, went into competition with Food Specialties in the sale of Chinese condiments. The restrictive covenant as written at the time of the sale was clearly of no value whatsoever to Boss, for the purchase of the trade names, etc., gave him that protection. The only reasonable purpose of a restrictive covenant was to keep Godston from competing in Chinese condiments generally for the two-year period agreed upon.
In McKeon v. Van Slyck, (223 N. Y. 392, 397-398) Judge Ora^e stated the applicable rule of evidence as follows: ‘ ‘ In civil cases a plaintiff is never required to prove his case by more than a preponderance of evidence * * *. They [the jury] may, therefore, be properly instructed that to make out a preponderance, the evidence should be clear and convincing [citing case]. But all these instructions in the last analysis are mere counsels of caution. The responsibility of determining whether the evidence is clear and convincing must ultimately rest upon the jury subject, of course, to the power of the court to set aside their verdict”
*344 The learned and experienced Official Referee, who saw Goldman, Stein and Godston on the witness stand and heard them testify, gave no credit to Godston’s claim that the written covenant expressed the true intention of the parties. As Judge Rippey said in Amend v. Hurley (293 N. Y. 587, 594): “ The advantages of the trial court who saw and heard the witnesses should be considered and, when truth hangs upon the credibility of witnesses, his decision should be given the greatest weight [citing cases].” (See, also, Roberts v. Fulmer, 301 N. Y. 277, 285.)
In our judgment, the evidence clearly, convincingly and overwhelmingly supports the determination of the Official Referee, and the majority of the Appellate Division were in error in reversing and making new findings.
The judgment appealed from should be reversed, and the interlocutory and final judgments of the Official Referee should be reinstated, with costs.
Judges Desmond, Van Voorhis and Burns concur with Judge Dye; Judge Froessel dissents in an opinion in which Chief Judge Conway and Judge Fuld concur.
Judgment affirmed.