Samuel H. Hofstadter, J.
In this action to foreclose a purchase-money mortgage on a leasehold the sole issue is whether the mortgage should be held to have become due on March 31, 1960, the date of maturity stated in the mortgage and in the mortgage note, payment of which it secures, or whether the note and mortgage should be reformed into a self-liquidating note and mortgage, payable in quarterly installments of $800 until fully paid.
The plaintiff is the assignee of the note and mortgage which he purchased on February 9,1960 from the original mortgagees at a small discount. It is not disputed that the plaintiff holds the instruments subject to any infirmities which might have been asserted against his assignors and the case will, therefore, be dealt with as though the assignors were the plaintiffs in this action.
The assignors, doing business as 47th Street Building Associates (Associates), were the tenant under a lease of the premises 35-39 West 47th Street, Manhattan, New York City, dated as of April 1, 1954, for an original term of 10 years from April 1, 1954, with an option in the tenant to renew for a further term of 11 years from April 1, 1964 and ending March 31, 1975. On February 3, 1955, Associates entered into a written agreement to sell this lease to the defendant’s assignor, subject to a prior mortgage of $40,000 thereon. Forty thousand dollars of the remaining purchase price was to be paid through the execution by the purchaser of a bond or note secured by a mortgage in that amount payable in quarterly installments of $800, including interest at 5% “ until paid ”. Closing under the foregoing agreement was set for March 15, 1955; the actual closing took place on March 17, though the closing instruments are dated March 15,1955. Before the closing, the purchaser named therein assigned its interest to the defendant (Danann), which executed the note and mortgage on which the present controversy hinges.
*896 By the terms of the note and mortgage so executed, Danann undertook to pay the principal sum of $40,000 “on or before March 31, 1960 ”, with interest at 5% per annum, in quarter-annual installments of $800 commencing on June 15,1955 ‘ ‘ until the whole of the principal sum shall have been paid.” Danann paid the $800 installment which fell due on March 15, 1960, but refused to pay the full balance of principal on March 31, 1960, as demanded by the plaintiff. Quarterly installments of $800 tendered since March 15,1960 have been rejected by the plaintiff.
Danann’s defense, stated in various forms, is that the March 31, 1960 maturity date was inserted in the note and mortgage by mutual mistake, or by mistake on its part and fraud on the part of Associates. There is a separate defense, wholly unproved, that the assignment by Associates to the plaintiff was made pursuant to a fraudulent conspiracy and that the plaintiff is not the real party in interest. Danann prays for reformation of the note and mortgage to delete the March 31, 1960 maturity date and for declaratory judgment to like effect.
It is unnecessary to set forth the conflicting evidence. In essence, Danann’s claim through its president is that he did not read either the note or the mortgage when he executed them and did not know that they contained the March 31, 1960 maturity date. Admittedly, Danann was represented by an experienced attorney, since deceased, both when the February 3,1955 agreement was made and when the closing took place. Its president said he signed the papers in reliance on his attorney who had authority to act for him. I do not credit the testimony that Danann’s president did not read the instruments or that he did not know they provided for the stated maturity date. On the contrary, the parties were in negotiation over various items on March 15 and March 16 and the closing was adjourned until March 17, 1955, to enable them to adjust their differences. At one point during their discussions, Associates offered to return Danann’s deposit and cancel the deal entirely. Among the matters discussed during this interval was the maturity of the purchase-money mortgage and it was agreed that it should mature in five years; Danann executed the note and mortgage pursuant to the agreement so reached.
One of the principals of Associates testified that, though the written agreement for the sale of the leasehold did not fix a maturity date five years after its date for the purchase-money mortgage, the parties had nevertheless agreed on this. Whether they did or not, it may at least be fairly inferred that, despite *897 the omission from the written agreement of a definite maturity date, the parties had not in their prior negotiations affirmatively agreed that the mortgage was to run on indefinitely until it was finally paid in full through the $800 quarterly installments. In this connection, it may be noted that at the time of closing, the renewal option under the lease had not yet been exercised and that at the rate of quarterly installments of $800 it would have taken approximately 19 years and 9 months to pay off the $40,000 purchase-money mortgage in full. It is of no particular moment why the February 3, 1955 agreement did not fix a maturity date. Nor are we any longer concerned with what might have been Danann’s rights had it insisted that the note and mortgage conform literally to that agreement. It is sufficient that Danann did not take that position. Instead it consented to the modification now embodied in the executed note and mortgage. It is not suggested that the parties were not free to agree on such modification. Moreover, normally all prior agreements are deemed merged in the ultimate instruments delivered at the closing.
It is found as a fact that Danann’s president knew the contents of the instruments. Even if he did not, his attorney certainly did, and if he was willing to sign in reliance on his attorney, without reading or informing himself of the contents, he is bound thereby. Under the rule that reformation will not bo granted unless mistake or fraud is established by clear and convincing proof, Danann has failed to establish its right to reformation (Amend v. Hurley, 293 N. Y. 587, 595; Johns Manville Sales Corp. v. Stone, 5 A D 2d 110, 114).
I find no merit in Danann’s contention that the note and mortgage are ambiguous. It is clear that the provision for the $800 quarterly installment payments merely prescribed the method of reducing the debt until the full balance became due on March 31, 1960. It neither contradicts nor impairs the efficacy of the provision fixing the maturity date.
It follows that Danann must be adjudged in default and that the plaintiff is entitled to judgment of foreclosure in the usual form as well as a declaratory judgment to like effect.
The defendant’s motions in its appendix numbered 3, 8 and 14 are granted; all its other motions are denied. The plaintiff’s objections to rulings on objections in its appendix are overruled; the plaintiff’s motions to strike testimony are denied. The plaintiff’s motions for judgment and to dismiss the first and second defenses and counterclaims are granted. The motion to dismiss the third defense and counterclaim (erroneously *898 referred to as the second defense and counterclaim) for declaratory judgment is denied hut, as stated, the declaration will be in favor of the plaintiff. The party adversely affected by the foregoing rulings has in each instance an exception thereto. The foregoing constitutes the decision pursuant to section 440 of the Civil Practice Act.