FRANK MEIER et al., Appellants, *v.* CHESTER M. BROOKS, Respondent.

Fourth Department, October 29, 1964.

*Rumizen & Rumizen (Israel Rumizen* of counsel), for appellants.

*Magavern, Magavern, Lowe & Beilewech (James L. Magavern* and *Louis J. La Mantia* of counsel), for respondent.

BASTOW, J. The parties to this action in May, 1947 entered into a written agreement by the terms of which plaintiffs leased to defendant a portion of certain premises in the Village of Attica. A dispute has arisen centering upon a renewal clause found in the lease. Specifically the lease reads that the term was for five years from August 1, 1947 " with the option hereby granted to the [tenant] of renewing said lease for an additional term of five years and additional terms of five years thereafter upon the [tenant] serving written notice upon the [landlords] of his intention to so renew   *   *   *   before the expiration of any such five year terms."

There is no dispute that at the end of the first and second five-year terms in 1952 and 1957 the defendant renewed the lease for an additional term without objection on the part of the plaintiffs. The latter, however, objected to a third renewal for a term of five years. When defendant asserted such right and refused to move from the premises this action was brought for reformation of the instrument.

The proof upon the trial presented a sharp factual issue as to the conversations between the parties prior to the preparation

of the lease. Both plaintiff, Mr. Meier, and defendant agreed that the original term was for five years. Meier testified that defendant first wanted one renewal of five years and later a second renewal of the same length. In his words — "I said, all right, but no more than this — a third five years, two renewals, I said absolutely no more than this."

The testimony of defendant is far from satisfactory. Upon direct examination he quoted plaintiff, Mrs. Meier, who was ill and unable to appear at the trial or testify, as stating that plaintiffs did not care how long the term was. Defendant did not deny the, statements of Mr. Meier but testified that the language of the lease was the agreement. Upon cross-examination he asserted that there was discussion of an original term of five years and additional options to renew. In defendant's words — "I don't recall discussing just a second one [option to renew] and an additional one."

Defendant's friend and business adviser, who was present during the discussions had a much clearer recollection than defendant of what transpired. In no uncertain terms he testified "[T]hat the lease would be renewable at the end of five years at the same terms and that  *  *  *  there was no limit, that that [the lease] would be renewable ad infinitum.  *  *  * There was no termination point put on it."

The attorney, who prepared the lease at the request of the defendant, testified and produced the original handwritten notes made by him before the lease was drawn and at the time of his first interview in 1947 with defendant. So far as here material they read: "5 yrs. Aug. 1, 1947  *  *  *  Priv. of renewal for additional 5 yrs. term at not to exceed $75 & at each expiration, priv. of 5 more." The lease as drafted, as we have seen, provided for one renewal for five years " and additional terms of five years thereafter " (emphasis supplied). The attorney conceded that in the preparation of the final document he might have added an " s " to the word " term ". He candidly admitted that if it had been the intention of defendant to have had the lease drawn with options of renewal in perpetuity he would have so drafted the instrument.

Upon all the proof the conclusion is irresistible that the version of plaintiff, Mr. Meier, is the correct one; that the term was to be for five years with two options to renew for successive terms of five years each. The notes of the draftsman of the lease, while not precise, confirm plaintiff's testimony. Opposed thereto is the ambiguous testimony of defendant and the incredible testimony of his friend that the lease should be renewable " ad infinitum." If such had been the intent of the

parties it could have been expressed by the draftsman thereof in a single sentence without reference to one or more successive renewals.

We conclude that the mistake was on the part of the attorney in reducing to writing the agreement of the parties. '' The case is a proper one for invoking the equitable remedy of reformation. ' Where there is no mistake about the agreement and the only mistake alleged is in the reduction of that agreement to writing, such mistake of the scrivener, or of either party, no matter how it occurred, may be corrected.' (*Born* v. *Schrenkeisen,* 110 N. Y. 55, 59.) ' In such a case equity will conform the written instrument to the parol agreement which it was intended to embody.' (*Pitcher* v. *Hennessey,* 48 N. Y. 415, 423.) * * * It need not be shown that the parties did not realize that inaccurate verbiage was used, nor need the language used be ambiguous.'' (*Hart* v. *Blabey,* 287 N. Y. 257, 262.) (See, also, 6 N. Y. Jur., Cancellation and Reformation of Instruments, § 45.)

In the light of certain statements in the dissenting opinion emphasis should be placed upon the fundamental difference between mutual mistake of the parties or fraud of one of the parties and a case, such as the one before us, where the mistake is found to be that of the draftsman of the instrument in reducing to writing the agreement of the parties. In the event of mutual mistake or fraud the act usually occurs during the negotiations of the parties. Where the mistake is that of the scrivener it arises '' *after* the parties have verbally concluded their agreement, and may occur in reducing that agreement to writing, by erroneously adding, omitting, or altering some term ''. (3 Pomeroy's Equity Jurisprudence [5th ed.], § 853.) The distinction is pointed out in *Born* v. *Schrenkeisen* (110 N. Y. 55, 59) in the following language: '' We think the defendants' answer sufficiently alleged the mistake in reducing the agreement of the parties to writing. It was not necessary for them to allege a mutual mistake in the reduction of the agreement to writing, there being no mistake as to the agreement. In such a case, if, by the mistake of the scrivener or by any other inadvertence, the writing does not express the agreement actually made, it may be reformed by the court.'' It follows that authorities such as *Amend* v. *Hurley* (293 N. Y. 587) quoted from at some length in the dissenting opinion, relating to mistakes made during negotiations by one of the parties or his attorney, are not particularly helpful upon the facts here presented.

We find no facts that should estop plaintiffs from obtaining equitable relief. The lease, as stated, was prepared by defendant's attorney. Plaintiffs had no lawyer and it is apparent from

reading his testimony that plaintiff husband is a man of limited education — in his words "I was not too good in English." He admitted that he could have taken the contract to an attorney — again in his words — "if I had mistrusted, probably I would." It is true that plaintiff discovered and had corrected another mistake in the instrument made by the attorney who prepared the lease. The oral agreement was that only a portion of the cellar was demised. The lease, as originally prepared, demised the entire cellar. This was seen by plaintiffs and corrected.

"The established law in New York is that the negligence of the party who seeks the reformation of an instrument, whether in failing to read the instrument before he signs it, or in failing thereafter to note the error for a long period of time, is not necessarily a bar to a suit for the reformation of the instrument." (6 N. Y. Jur., Cancellation and Reformation of Instruments, § 46.) (See, also, *Albany City Sav. Inst.* v. *Burdick,* 87 N. Y. 40, 46.) While one who accepts a written instrument clear in its terms cannot be heard to say that he misunderstood its plain language we are here considering an unclear if not ambiguous renewal clause. Pertinent here is the language quoted with approval by this court in *Schneider* v. *Swartele* (239 App. Div. 329, 332, affd. 273 N. Y. 662): "'If the environment and the motive of the parties, the consideration and the necessities to be met, make the contract as it is written a highly improbable one, one for which there was no motive, or necessity, or consideration, then the writing has little self-supporting force, and a relatively small amount of clear and credible evidence will establish the mistake.'"

In passing it should be said that we find no evidence to justify the conclusory factual finding of the trial court that plaintiffs "retained the rent checks given by defendant." The proof is that plaintiffs were living outside the State. The rent checks were sent to their agent who indorsed two of such checks, as agent, and deposited them in an agency account. There is no proof that this was a knowledgeable act binding on plaintiffs. Upon the return of the latter to this State they moved with expedition to disaffirm the attempted renewal of the lease by defendant. Similarly, the finding of the trial court that defendant expended $6,390.56 upon the premises has small probative force in deciding the issues before us. When questioned by his counsel defendant first said that he had so spent "[a] number of thousand dollars". His attorney then attempted to refresh defendant's recollection with a writing but the latter said there was no total thereon; that he could not remember the exact figure "but it would be in excess of $6,000." Presumably this was

expended during the 15-year life of the lease. There is no proof that any portion was spent in expectation of a further renewal.

The judgment should be reversed and plaintiffs granted judgment reforming the lease to provide that defendant had the option to renew the lease for two additional terms of five years each to commence on August 1, 1952 and terminate on July 31, 1962 and that the lease terminated on the latter date.

GOLDMAN and HENRY, JJ. (dissenting). In order to grant reformation for the plaintiffs, the court must find that there was mutual mistake of the parties or fraud perpetrated upon the plaintiffs by the defendant. There is no proof of any fraud whatsoever. In order to prevail plaintiffs must therefore carry the burden of showing mistake. No clearer statement of this obligation can be found than in *Amend* v. *Hurley* (293 N. Y. 587, 595) where the court said: "Before defendant can be granted reformation, *he must establish his right to such relief by clear, positive and convincing evidence.* Reformation may not be granted upon a probability nor even upon a mere preponderance of evidence, but only upon a certainty of error (*Christopher St. R. Co.* v. *23d. St. R. Co.*, 149 N. Y. 51; *Salomon* v. *North British & M. Ins. Co.*, 215 N. Y. 214; *Susquehanna S.S. Co.* v. *Andersen & Co.*, 239 N. Y. 285; *Porter* v. *Commercial Cas. Ins. Co.*, 292 N. Y. 176)." Not only have the plaintiffs failed to produce such "*clear, positive and convincing evidence*" but the written instrument itself is so clear and unambiguous that to change it as requested by the plaintiffs would be tantamount to the court remaking the contract upon which the parties originally agreed.

The lease as signed was not the first draft presented to plaintiffs. They had made objection to a previous draft and among other changes the same paragraph which is here under consideration was changed at plaintiffs' request. The language of the renewal provision very significantly negates the possibility of mistake. Plaintiffs contend that the provision "of renewing said lease for an additional term of five years and additional terms of five years thereafter" was changed by the addition of the letter "s" to the word "term". To make such a change in this paragraph would require not only the dropping of the letter "s" but the addition of the word "an" before the phrase "additional terms". As the court said in *Amend* v. *Hurley* (*supra*, p. 595): "Nor may the defendant secure reformation merely upon a showing that he or his attorney made a mistake. In the absence of fraud, the mistake shown 'must be one made by both parties to the agreement so that the intentions of neither

are expressed in it ' (*Salomon* v. *North British & M. Ins. Co.,
supra,* p. 219). The court may not compel the plaintiffs [defendant in case at bar] to be bound by a contract which their principal
never made (*Curtis* v. *Albee,* 167 N. Y. 360, 365).''

Plaintiffs argue that it is unlikely that any landlord would
execute a lease providing for indefinite renewals at a rental of
but $75 per month. It must be kept in mind that the renewals
required a monthly payment of $100 rather than the original
$75. It is further significant as to the understanding of the
parties, as found by the trial court, '' That the Defendant spent
considerable sums of money, to wit, $6,390.56 in remodeling,
painting and furnishing said Pharmacy prior to August 1, 1962 ''
(the beginning of the third renewal term). Furthermore, plaintiffs received and cashed two checks in payment of rent for the
first two months of the third renewal term before they at any
time during the 15 years and two months of occupancy by the
defendant raised any question as to any possible ambiguity or
mistake in the lease. Reference is made in the prevailing opinion
to the quality of the defendant's testimony as to his understanding regarding the number of terms to which he was entitled
under the lease. No clearer statement of his understanding
could be made than '' I was interested in indeterminate renewals
if the business warranted it right from the start '' and further
that '' The lease is drawn exactly as I requested it to be drawn ''.
The positive character of this testimony fully justified the trier
of the facts in finding '' That there is no ambiguity in the terms
of the lease that requires an interpretation by the Court '' and
'' That there was no mutual mistake of the parties in the
formation of the lease ''.

In the face of this positive proof by the defendant, buttressed
by the testimony of the attorney who drafted the lease and who
after examination of his notes made at the time of the preparation of the lease stated that the lease was drawn '' in accordance
with instructions given to me by Mr. Brooks after conferences
between Mr. Brooks and the Meiers '', the weight which should
be accorded to the written lease has not been overbalanced by
any other evidence. '' It is to be presumed that the written
instrument was carefully and deliberately prepared and executed,
and, therefore, is evidence of the highest character and will
be regarded as expressing the intention of the parties to it
until the contrary appears in the most satisfactory manner.''
(*Christopher & Tenth St. R. R. Co.* v. *Twenty-third St. Ry. Co.,*
149 N. Y. 51, 58.) (Also, see, *Burns* v. *City of New York,* 213
N. Y. 516, 521.) The instrument which the plaintiffs signed
with due formality had been in their possession for a day or

more and it contains only unambiguous words of common usage and common meaning. Under these circumstances, when judicial intervention is sought to rewrite the language to say something different, the complaining parties are bound to make a very strong showing that they were intentionally misled into signing such an instrument (*C. L. Holding Corp.* v. *Schutt Court Homes,* 280 App. Div. 341, affd. 307 N. Y. 648).

In our judgment, upon the record before us, the trial court's determination is not against the weight of the evidence and should be affirmed.

WILLIAMS, P. J., and DEL VECCHIO, J., concur with BASTOW, J.; GOLDMAN and HENRY, JJ., dissent and vote to affirm, in opinion.

Judgment and order reversed on the law and facts, with costs and judgment granted in favor of plaintiffs. Certain findings of fact disapproved and reversed and new findings made.