Jose R. Fernandez et al., Infants, by Jose Fernandez, Their Parent, et al., Appellants, v. Clarence Jordan, Defendant, and Enter Service Corp., Respondent.— Judgment for defendant-respondent, dismissing the complaint, entered October 25, 1968, after trial before the court without a jury, affirmed without costs and without disbursements. As the dissent concedes, " ordinarily the decision of the trial court on the matter of the credibility of the witnesses will be given the greatest weight." There is no reason here to depart from the ordinary. While it is true that the Trial Justice was not precisely restrained in his forthright, prompt and immediate reactions to the testimony of those witnesses whom he obviously disbelieved, nothing in the record indicates bias or prejudice on his part, or even a hint of any preconceived notion in favor of either side. If anything, the court's comments reflect credibility judgments, the pronouncement of which the Justice might better have withheld completely or at least to the end of the case. Certainly no witness was stifled; on the contrary, every effort was made to elicit responsive and relevant answers from the witnesses on both sides, not alone those produced by plaintiffs. The quoted statement concerning the witness Ramirez is no more than a perhaps inartistic way of saying that the court's mind was in even balance, i.e., that the burden of persuasion of the trier of the fact had not been met. And it should go without saying that there was no jury present to be swayed by the court's comments. In an appropriate case, that is where the court has betrayed an inclination or predisposition such as would either interfere with his function as trier of the fact, or cause him to rule improperly on the law or to misapprehend the evidence, or — most important — to trammel counsel in presentation of his case, it would, of course, be our duty to reverse and remand. But this is not that case, for it cannot be said on this record that any of these factors was present or that the court's conclusion was at variance with the evidence. Perhaps it would have been better judicial demeanor to have exhibited an icy and silent calm throughout the trial, but it does not appear that justice has been disserved. Concur — Eager, J. P., Markewich and McNally, JJ.; Nunez, J., dissents in the following memorandum: On November 13, 1966 at about 1:30 A.M. Jose Fernandez 20, and his brother Antonio 18, were struck down and severely injured by a taxicab owned by the corporate defendant and driven by defendant Clarence Jordan. Concededly they were crossing at the southerly crosswalk of Amsterdam Avenue and 136th Street going from west to east; they had traversed a substantial portion of Amsterdam Avenue when both were struck by the front of the northbound taxicab. The two plaintiffs and two disinterested witnesses testified that the traffic light was green for the pedestrians and red for north and south traffic. Only one witness, defendant Jordan, testified that the traffic light was green for north and south traffic and red for east and west; he admitted that plaintiffs were walking from west to east when he struck both of them with the front end of his taxicab at the south crosswalk. He claimed that at 1:30 in the morning with two passengers in his taxicab he was traveling at a speed of 23 miles per hour. His excuse for striking the two young men was that both of them ran out in front of him from behind a fast moving southbound car. They performed this unusual and most difficult feat simultaneously and notwithstanding the fact that southbound traffic was heavy at the time. The case was tried to the court without a jury. An examination of the record shows that the finding of the court in favor of defendants is clearly against the weight of the credible evidence and that the plaintiffs did not receive a fair trial. The constant interference with plaintiffs and their witnesses, as distinguished from

the court's treatment of defendant Jordan, the sole eye witness for the defendants, and the comments of the Trial Judge, constitute reversible error. Whereas the court dominated the questioning of the plaintiffs and their witnesses, and in fact frequently conducted cross-examination in a manner worthy of expert defense counsel, it scrupulously refrained from interfering with defendants' counsel in the direct examination of defendant Jordan. Plaintiffs' counsel was prevented from presenting his evidence by the court's constant interference and taking over of the questioning. During the direct examination of Jose, the first witness, the court *sua sponte* came to the conclusion that Jose, who had been testifying through a Spanish interpreter, was able to testify in English and directed him so to do thus depriving him of his absolute right to testify in the language of his choice. After that arbitrary and illogical direction had been given the following appears: "Q. Now, what happened after you were struck by the cab? I am asking you directly, without the interpreter? A. In English? I don't know a thing after happened. I don't know what's happen after hit the car." This went on for several more questions until the court realized its error and directed that future questions be put to the witness in Spanish, following which the court observed "This fellow doesn't even understand Spanish". The transcript shows that during one of the many lengthy examinations of Jose by the Trial Judge, plaintiffs' counsel attempted to put in a word and the following appears: "Mr. Rettinger: Your Honor, may I interrupt at this point? The Court: What is in the point in your interrupting? I can't get the man to say the same thing twice. What's the point in interrupting? I have to understand the man (meaning Jose) *and find out if he is a fool, a charlaton or a knave*" (emphasis supplied). For no reason apparent from the record, the court disposed of the two disinterested witnesses, Ramirez and Bello, called by plaintiffs, as follows: He said of Ramirez' testimony I wouldn't hang a sheep on Mr. Ramirez' testimony. I don't think he was there at all. I don't think he was telling the truth". Apparently the court realized it had been unjustified in stating that Ramirez had not been at the scene of the accident and had perjured himself because later the Judge said: "I said before on this record * * * that I did not believe * * * Ralph Ramirez. I did not believe him. And the reason why I didn't believe him was not necessarily because I thought he was telling a lie, but because I could not come to the conclusion that he was telling the truth. And that isn't the same thing. I just wasn't satisfied that he was telling the truth. And I am not required to be a crystal ball gazer." Of Bello, without the slightest justification, the court said: "Please, under the circumstances of the production of this witness * * * don't you think we ought to scrutinize this witness with extraordinary care to make sure that somebody hasn't been tampering with this witness?" At one point during the cross-examination of defendant Jordan, the court, in sharp contrast to his treatment of plaintiffs and their witnesses, stated: "I regard most of the questions on cross-examination so far a hopeless waste of time." Police officer Henderson was called by the defendants. His disinterested and clear testimony was unexpectedly favorable to the plaintiffs. The court made this observation: "And I will go further and I will tell you now, too, that I couldn't even understand what the police officer was talking about. *It looked to me like I was traveling in a phantasmagoria throughout this whole trial.*" (Emphasis mine.) The plaintiffs were entitled to a trial before a Judge who saw them as real people — not as phantasms — a Judge who recognized that what had taken place had been a real accident wherein two human beings had been seriously injured — and not a phantasmagoria, i.e., a shifting series of phantasms, illusions, or deceptive appearances, as in a dream or as created by the imagination. Any remaining doubt that plaintiffs did not receive a fair

trial was removed by the Judge's remarks at the conclusion of the case: "Sir, the very best I will say for you on the testimony that has been adduced here is that you cannot say, on this record, whether the light was green or red when this accident happened, *because the evidence is so evenly balanced.* That's the best I can say for you. The worst I can say for you and all your witnesses is that they are contradictory, that they tell you various stories, out of both sides of their mouths, every one of them." (Emphasis supplied.) The "even balance" of the evidence was a margin of four witnesses to one and all physical uncontradicted facts favoring plaintiffs. They gave "contradictory" testimony and "spoke out of both sides of their mouths, every one of them" only because they contradicted defendant Jordan's testimony in one respect — the color of the light. Significant also to show the court's partiality is the fact that it commented unfavorably on the fact that plaintiffs' witnesses were not listed on the aided card by the police. Not one word of condemnation for the absence of the names of two passengers in the taxicab at the time of the accident who obligingly waited at the scene, at Jordan's request, until a representative of his insurance company appeared and took their statements. Defendants did not call either one of these witnesses. Ordinarily the decision of the trial court on the matter of the credibility of witnesses will be given the greatest weight (*Amend* v. *Hurley,* 293 N. Y. 587, 594; *Smith* v. *Smith,* 273 N. Y. 380, 383). However, in this case the record reveals such partiality, bias against the plaintiffs, interruptions in the examination of witnesses by the Judge and, indeed, the taking over almost completely of the examination of plaintiffs' witnesses and the injection of intemperate remarks that plaintiffs were deprived of a fair and unprejudiced consideration of their case. The courts have frequently reversed judgments where plaintiff was deprived of a fair trial. (See *Levy* v. *Reilly,* 18 A D 2d 632; *Morales* v. *Olivero,* 23 A D 2d 554; *Pordy* v. *Scot Serv. Co.,* 15 A D 2d 911.) The parties stipulated to try only the issue of liability and if plaintiffs prevailed, then judgment was to be rendered in the sum of $13,500 for Jose and $1,500 for Antonio. On an appeal from a judgment rendered in an action tried by the court without a jury, this court should grant *the motion for judgment* which the court below should have granted. I would enter judgment in favor of plaintiff Jose Fernandez in the sum of $13,500 and in favor of Antonio Fernandez in the sum of $1,500 pursuant to stipulation of the parties. (See CPLR 5522; *Bruno* v. *Kosnac,* 13 A D 2d 650.)